| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | **FOR PUBLICATION** |
| SOUTHERN DISTRICT OF NEW YORK | |

-------------------------------------------------------X

In re:                                                :
                                                       :
MUSICLAND HOLDING CORP., <u>et al.</u>,     :        Chapter 11 (Confirmed)
                                                       :        Case No. 06-10064 (SMB)
            Debtors.                       :

-------------------------------------------------------X

THE RESPONSIBLE PERSON OF            :
MUSICLAND HOLDING CORP., <u>et al.</u>,     :
                                                       :
            Plaintiff,                     :
                                                       :
    -- against --                          :        Adv. Proc. No. 08-01023
                                                       :
BEST BUY CO., INC., BRADBURY H.       :
ANDERSON, DAVID P. BERG,              :
CONNIE B. FUHRMAN, KEVIN P.           :
FREELAND, DARREN R. JACKSON,          :
RODGER R. KROUSE, MARC J. LEDER,  :
ALLEN U. LENZMEIER and JAMES L.       :
MUEHLBAUER,                            :
                                                       :
            Defendants.                    :

-------------------------------------------------------X

## MEMORANDUM DECISION GRANTING IN PART
## AND DENYING IN PART MOTIONS TO DISMISS

**A P P E A R A N C E S:**

**Attorneys for Plaintiff:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022

> Mark T. Power, Esq.
> John P. Amato, Esq.
> Robert J. Malatak, Esq.
> Edward L. Schnitzer, Esq.
>      Of Counsel

**Attorneys for Defendants Best Buy Co., Inc.,
Bradbury H. Anderson, David P. Berg, Connie B.
Fuhrman, Kevin P. Freeland, Darren R. Jackson,
Allen U. Lenzmeier and James L. Muehlbauer:**

FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016

>      Michael P. Richman, Esq.
>      Douglas S. Heffer, Esq.
>           Of Counsel

>      - and -

ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

>      Elliot S. Kaplan, Esq.
>      Anne M. Lockner, Esq.
>           Of Counsel

**Attorneys for Defendants Rodger R. Krouse and Marc J. Leder:**

DREIER LLP
499 Park Avenue, 36th Floor
New York, NY 10022

>      Norman N. Kinel, Esq.
>      Terence D. Watson, Esq.
>           Of Counsel

>      - and -

KLUGER, PERETZ, KAPLAN & BERLIN, P.L.
Miami Center, 17th Floor
201 South Biscayne Boulevard
Miami, FL 33131

>      Andrew P. Gold, Esq.
>      D. Brett Marks, Esq.
>      Eyal Berger, Esq,
>           Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

The plaintiff filed this adversary proceeding against the debtors' former parent, officers and directors primarily to avoid and recover transfers aggregating $145,385,892. The Amended Complaint also asserts claims for the payment of illegal dividends, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty and rescission. The defendants filed motions to dismiss the Amended Complaint.

For the reasons that follow, the motion is granted to the extent of dismissing the Tenth, Eleventh and Twelfth Claims for Relief, and the portion of the Eighth Claim for Relief directed against the defendants Rodger R. Krouse and Marc J. Leder. The motions are otherwise denied.

## BACKGROUND

**A.    Best Buy's Acquisition of Musicland**

At all relevant times, Musicland was engaged in the retail sale of music, movies, games and other entertainment-related products.[1] Musicland operated hundreds of retail stores throughout the United States. In January 2001, Best Buy Co., Inc. ("Best Buy") acquired Musicland for $696 million. (¶ 27.)[2] The purchase price consisted of two parts. First, Best Buy acquired the common stock of Musicland Store Corp. ("MSC") for $425 million. (¶ 28.) Second, it assumed $271 million of long-term debt, or infused that

---

[1]    According to the Amended Complaint, "Musicland" includes the debtors Musicland Holding Corp. (on and after June 16, 2003), Media Play, Inc., MG Financial Services, Inc., MLG Internet, Inc., Musicland Purchasing Corp., Musicland Retail, Inc., Request Media, Inc., Sam Goody Holding Corp., Suncoast Group, Inc., Suncoast Holding Corp., Suncoast Motion Picture Company, Inc., Suncoast Retail, Inc., TMG Caribbean, Inc., TMG-Virgin Islands, Inc. and The Musicland Group, Inc. (Amended Complaint ¶ 9 & n.3.)

[2]    "(¶ __)" refers to paragraphs of the Amended Complaint, dated March 11, 2008. (ECF Doc. # 11.)

amount which The Musicland Group, Inc. ("TMG") used to retire long-term debt owed to third parties holding senior subordinated notes (the "Third Party Debt"). (¶¶ 1, 28, 32, 33.) Upon information and belief, Best Buy made additional equity investments during the next two years, (¶ 34), and made net equity investments totaling $381,256,676 in addition to the $425 million spent to purchase MSC's stock. (¶ 35.)

In early 2003, Best Buy decided to sell Musicland due to its poor financial condition. (¶ 38.) Unable to find a buyer willing to pay a purchase price it deemed sufficient, (¶ 39), Best Buy began to develop a plan for the liquidation of Musicland. (¶ 40.) While formulating a liquidation plan, Sun Capital Partners, Inc. ("Sun") approached Best Buy with an offer to purchase Musicland for a nominal price. (¶ 41.)

**B.      Pre-Sale Transactions**

A sale to Sun eventually closed, but before then, certain transactions took place that form a significant part of the plaintiff's claim. On March 31, 2003, Best Buy, as lender, and TMG, as borrower, executed a Revolving Credit Loan Agreement (the "Loan Agreement"). (¶ 44; <u>Stock Purchase Agreement</u>, Ex. 29A.)[3] The Loan Agreement memorialized TMG's purported indebtedness to Best Buy for loans and inter-company advances previously made by Best Buy to finance TMG's working capital needs in the amount of $381,256,676. (¶ 45; <u>Stock Purchase Agreement</u>, Ex. 29A, at BBY0000650.) The Loan Agreement further provided that Best Buy, in its sole discretion, could make additional loans and advances to TMG and/or Musicland to finance its working capital

---

[3]      At the Court's request, the parties supplied the Stock Purchase Agreement between Best Buy and Sun (actually between MSC, TMG and Musicland Holding Corp.). The Stock Purchase Agreement also attaches the Debt Instruments, defined in the succeeding text, as well as certain other documents that the plaintiff relied upon in drafting the Amended Complaint. (<u>See</u> ECF Doc. # 43.)

needs, so long as the "Revolving Credit Facility" outstanding at any one time did not exceed $400 million.  (¶ 47; Stock Purchase Agreement, Ex. 29A, at BBY0000650, § 2.1.)  TMG also executed a Revolving Note (the "Original Note") in the amount of $400 million for the benefit of Best Buy.  (¶ 48; Stock Purchase Agreement, Ex. 29A, at Ex. A.)

Between March 31, 2003 and June 16, 2003, and upon information and belief, Musicland transferred $110,385,892 in cash and property to Best Buy in partial payment of the Original Note (the "First Transfer").  (¶ 50.)  In addition, MSC assumed $35 million of the outstanding principal balance due under the Original Note.  (¶ 51; Stock Purchase Agreement, Ex. 29B, at BBY0000665.)  These two transactions reduced TMG's and/or Musicland's indebtedness to Best Buy to $235,870,784.  On June 16, 2003, TMG executed an Amended and Restated Promissory Note in the amount of $235,870,784 (the "Amended Note").  (¶ 52; Stock Purchase Agreement, Ex. 29B.)  The Amended Note replaced the Original Note.  (Stock Purchase Agreement, Ex. 29B, at BBY0000665.)

## C.    The Sale of Best Buy to Sun

On June 16, 2003, MSC and TMG as sellers, and Musicland Holding Corp. ("Musicland Holding"), an entity formed by Sun for the purpose of acquiring Musicland, (¶ 56), as buyer, entered into the Stock Purchase Agreement.[4]  Under the Stock Purchase Agreement, Musicland Holding agreed to purchase all of the TMG shares from MSC for $1.  (¶ 57; see Stock Purchase Agreement, Ex. 1, at §§ 2.1, 2.2(b)(i).)

---

[4]        See supra note 3.

In addition, TMG agreed to pay $35 million to Best Buy "immediately following the Closing," (Stock Purchase Agreement, Ex. 1, at BBY0000016), and in exchange, Best Buy agreed to reduce the principal balance on the Amended Note from of $235,870,784 to $30 million.  (¶ 53.)  TMG paid the $35 million on June 16, 2003 (the "Second Transfer," and collectively with the First Transfer, the "Transfers"), (¶ 54; Stock Purchase Agreement, Ex. 34, at BBY0000691; Ex. 36, at BBY0000700), and TMG executed the Second Amended and Restated Promissory Note (the "Second Amended Note") in the amount of $30 million.  (¶ 55; Stock Purchase Agreement, Ex. 35.)  Best Buy and Musicland Holding simultaneously entered into the Note Purchase Agreement pursuant to which Best Buy sold the Second Amended Note to Musicland Holding for $1.00.  (¶ 58; Stock Purchase Agreement, Exs. 36, 40.)

The Loan Agreement, the Original Note, the Amended Note and the Second Amended Note are referred to collectively as the "Debt Instruments".

**D.     This Adversary Proceeding**

Musicland filed chapter 11 petitions in this Court on January 12, 2006, and confirmed the Second Amended Joint Plan of Liquidation (the "Plan") on January 18, 2008.  (Order Confirming Debtors' Second Amended Joint Plan of Liquidation, dated Jan. 18, 2008 ("Confirmation Order"))(ECF Doc. # 1905, filed in case no. 06-10064.) The Committee filed the Complaint, (ECF Doc. # 1), on January 11, 2008, and the Responsible Person (the "plaintiff") filed the Amended Complaint on March 11, 2008 against Best Buy and a group of nine individual defendants (the "Individual

Defendants"). (ECF Doc. # 11.) The Amended Complaint includes the following

twelve claims for relief:[5]

| Count | Defendants | Nature of Claim |
|:---:|:---|:---|
| 1 | Best Buy | Recharacterization of Best Buy's interests – satisfied by the Transfers – from debt to equity or capital contributions |
| 2 | Best Buy | Avoidance of the Debt Instruments and avoidance and recovery of the Transfers as actual fraudulent transfers under §§ 544 and 550 |
| 3 | Best Buy | Avoidance of the Debt Instruments and avoidance and recovery of the Transfers as constructive fraudulent transfers based on allegations of unreasonably small capital under §§ 544 and 550 |
| 4 | Best Buy | Avoidance of the Debt Instruments and avoidance and recovery of the Transfers as constructive fraudulent transfers based on allegations of inability to pay incurred debts under §§ 544 and 550 |
| 5 | Best Buy | Avoidance of the Debt Instruments and avoidance and recovery of the Transfers as fraudulent transfers based on allegations of insolvency under §§ 544 and 550 |
| 6 | Best Buy | Avoidance of the Debt Instruments and avoidance and recovery of the Transfers as fraudulent transfers to insiders under §§ 544 and 550 |

---

[5]     When the Committee filed the Complaint, its standing was based on a stipulation "so-ordered" on February 6, 2007 (the "Stipulation"), (ECF Doc. # 1514, filed in case no. 06-10064), which provided that the Committee could assert avoidance claims under chapter 5 of the Bankruptcy Code. The Stipulation also provided that once the pending plan was confirmed, the Responsible Person would automatically be substituted as party-plaintiff. The Stipulation did not authorize the Committee or the Responsible Person to prosecute non-avoidance claims such as those based on unlawful dividends, breach of fiduciary duty, aiding and abetting breach of fiduciary duty or rescission. The Complaint nevertheless included these claims.

     The Confirmation Order and the Plan granted the Responsible Person greater authority than the Stipulation. He was deemed to represent the Musicland estates, with "all powers, authority and responsibilities specified in the Plan," (Confirmation Order, at ¶ 18), with the power, inter alia, to prosecute "any Avoidance Action and other causes of action on behalf of the Debtors and the Estates," (Second Amended Joint Plan of Liquidation of Musicland Holding Corp. and its Affiliated Debtors, dated Oct. 13, 2006, at Art. 7(B)(ii))(ECF Doc. # 1219, filed in case no. 06-10064), and to "enforce any and all rights and interests of the Debtors and the Estates." (Id., at Art. 7(B)(iii).) The Plan became "effective" on January 30, 2008. (Notice of Occurrence of Effective Date of Second Amended Joint Paint [sic] of Liquidation of Musicland Holding Corp. and its Affiliated Debtors, dated Jan. 31, 2008)(ECF Doc. # 1918.)

     The Responsible Person filed the Amended Complaint after the effective date of the Plan. The Amended Complaint includes the same avoidance and other common law and statutory claims as the Complaint. By then, the Responsible Person was the real party in interest with the standing to assert all of the claims on behalf of the Musicland estates.

| 7 | Individual Defendants | Disgorgement of the Transfers as illegal dividends |
| 8 | Individual Defendants | Breach of fiduciary duty |
| 9 | Best Buy | Aiding and abetting the Individual Defendants' breach of fiduciary duty |
| 10 | Best Buy | Rescission of the Debt Instruments based upon unilateral mistake |
| 11 | Best Buy | Rescission of the Debt Instruments based upon mutual mistake |
| 12 | Best Buy | Rescission of the Debt Instruments based upon fraud |

The claims rest on two alternative theories.  First, if the various Debt Instruments evidenced legitimate debts, the Transfers in satisfaction of the Debt Instruments were insider preference payments under applicable state law (the "Debt Scenario").  Second, if there was no underlying legitimate debt, and instead, Best Buy owned equity in Musicland, the Transfers were intentionally or constructively fraudulent under applicable state law, and were also illegal dividends (the "Equity Scenario").  The plaintiff also contends that under either theory, the Individual Defendants are liable for breach of their fiduciary duty (aided and abetted by Best Buy) to Musicland and its creditors.

The defendants fall into two groups, separated temporally by the June 16, 2003 closing.  The first group consists of Best Buy and those officers and directors of Musicland, most of who also served as officers and/or directors of Best Buy.  This group includes the following individual defendants:

| Defendant | Position with Musicland | Position with Best Buy |
| --- | --- | --- |
| Bradbury H. Anderson | Director of TMG, MSC and a number of the other debtors | Director, Vice Chairman and Chief Executive Officer |
| David P. Berg | Vice-President and Assistant Secretary of MSC and Vice President, Secretary and | Vice President and Associate General Counsel, in 2004, Senior Vice President of |

|  | General Counsel of TMG and a number of the other debtors | Strategic Alliances, and in 2006, Chief Operating Officer of Best Buy International |
|---|---|---|
| Connie B. Fuhrman | Director and President of TMG, MSC and a number of the other debtors | Senior Vice President of BestBuy.com |
| Kevin P. Freeland | Director and President of TMG, MSC and a number of the other debtors | Senior Vice President |
| Darren R. Jackson | Senior Vice President of Finance, Treasurer/Executive Vice President of Finance and Chief Financial Officer of MSC, and Director of TMG, MSC and a number of the other debtors | Executive Vice President of Finance and Chief Financial Officer |
| Allen U. Lenzmeier | Director of TMG, MSC and a number of the other debtors | Vice Chairman, President, Chief Operating Officer and Director |
| James L. Muehlbauer | Vice President of Finance and Treasurer of TMG, MSC and a number of the other debtors | In June 2003, Senior Vice President of Finance |

(¶¶ 18-22, 25, 26.)  Muehlbauer, Anderson, Berg, Fuhrman, Freeland, Jackson and

Lenzmeier are referred to collectively as the "Pre-Sale Individual Defendants."

After the sale, Sun installed its own officers and directors to replace the Pre-Sale

Individual Defendants.  This is the second group.  Rodger R. Krouse, co-founder and Co-

Chief Executive Officer of Sun, became Director and Vice President of TMG.  (¶ 23.)

Marc J. Leder (collectively with Krouse, the "Post-Sale Individual Defendants") served

as Director and Vice-President of TMG, and like Krouse, was co-founder and Co-Chief

Executive Officer of Sun.  (¶ 24.)

### E.    The Motions to Dismiss

Best Buy and the Pre-Sale Individual Defendants moved to dismiss the

Amended Complaint for failure to state a claim upon which relief can be granted, failure

to plead fraud with particularity and lack of standing.  The Post-Sale Individual

Defendants moved to dismiss the Amended Complaint for failure to state a claim upon

which relief can be granted.  They also joined in the argument made by the Pre-Sale

Individual Defendants that the plaintiff lacked standing to prosecute the breach of

fiduciary duty claims.

### DISCUSSION

### A.    Standards Governing Motion

#### 1.    FED. R. CIV. P. 12(b)(6)

On a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), a court must

"accept all factual allegations in the complaint as true," Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); accord Leatherman v. Tarrant County

Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), even if the

allegations are doubtful in fact.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965

(2007).  The factual allegations must nevertheless be plausible, In re Elevator Antitrust

Litig., 502 F.3d 47, 50 (2d Cir. 2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.

2007), cert. granted sub nom. Ashcroft v. Iqbal, 128 S. Ct. 2931 (2008), and "raise a right

to relief above the speculative level."  Bell Atl. Corp., 127 S. Ct. at 1965; accord ATSI

Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  "[L]abels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Bell Atl. Corp., 127 S. Ct. at 1965; accord Paycom Billing Servs. v. Mastercard Int'l,

Inc., 467 F.3d 283, 289 (2d Cir. 2006)("we do not 'permit conclusory statements to

substitute for minimally sufficient factual allegations.'")(quoting Furlong, M.D. v. Long

Island Coll. Hosp., 710 F.2d 922, 927 (2d Cir. 1983)); Amron v. Morgan Stanley Inv.

Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006)("bald assertions and conclusions of law

will not suffice" to defeat a motion to dismiss)(internal quotation marks omitted).

Instead, the plaintiff must "amplify a claim with some factual allegations in those

contexts where such amplification is needed to render the claim plausible."  Iqbal, 490

F.3d at 157-58 (emphasis in original).  "[O]nce a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the

complaint."  Bell Atl. Corp., 127 S. Ct. at 1969; accord Roth v. Jennings, 489 F.3d 499,

510 (2d Cir. 2007).

        "[C]ourts must consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice."  Tellabs, 127 S. Ct. at 2509.  Courts may also consider "any

written instrument attached to the complaint, statements or documents incorporated into

the complaint by reference, legally required public disclosure documents filed with the

SEC, and documents possessed by or known to the plaintiff and upon which it relied in

bringing the suit."  ATSI Commc'ns, 493 F.3d at 98; accord Roth, 489 F.3d at 509;

Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Rothman v.

Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000).  "Where a plaintiff's conclusory allegations

are clearly contradicted by documentary evidence incorporated into the pleadings by

reference, however, the court is not required to accept them."  Labajo v. Best Buy Stores,

L.P., 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007); accord Kuhne v. Midland Credit Mgmt.,

Inc., No. 06 Civ. 5888(DC), 2007 WL 2274873, at *1 (S.D.N.Y. Aug. 9, 2007);

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

Here, the Amended Complaint relied upon numerous documents, including the

Debt Instruments, the Stock Purchase Agreement and the Note Purchase Agreement.  As

noted earlier, the Stock Purchase Agreement was provided by the parties, and attached

the other relevant documents.

### 2.    FED. R. CIV. P. 9(b)

Federal Civil Rule 9(b) requires the plaintiff to plead fraud with particularity.[6]

Even where fraud is not an element of the claim, the allegations must satisfy FED. R. CIV.

P. 9(b) if the claim is based on fraudulent conduct.  Krause v. Forex Exch. Mkt., Inc., 356

F. Supp. 2d 332, 338 n.49 (S.D.N.Y. 2005); see Rombach v. Chang, 355 F.3d 164, 171

(2d Cir. 2004)("Rule 9(b) . . . is not limited to allegations styled or denominated as fraud

or expressed in terms of the constituent elements of a fraud cause of action.").  Although

scienter may be pleaded generally, the pleader must "allege facts that give rise to a strong

inference of fraudulent intent."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128

(2d Cir. 1994).[7]  The "strong inference" requirement is appropriate to ward off

---

[6]    Rule 9(b) states:

   (b) FRAUD OR MISTAKE; CONDITIONS OF MIND.  In alleging fraud or mistake, a
   party must state with particularity the circumstances constituting fraud or mistake.
   Malice, intent, knowledge, and other conditions of a person's mind may be alleged
   generally.

[7]    The discussion that follows borrows heavily from case law interpreting the standard for pleading
scienter in securities fraud actions brought under the Private Securities Litigation Reform Act of 1995
("PSLRA").  Congress adopted the Second Circuit's "strong inference" standard when it enacted the
PSLRA.  Tellabs, 127 S. Ct. at 2509.  The same standard has been applied in this Circuit to non-securities

allegations of "fraud by hindsight." See id. at 1129 (quoting Denny v. Barber, 576 F.2d

465, 470 (2d Cir. 1978)(Friendly, J.)).  A strong inference of fraudulent intent "may be

established either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness."  Id. at 1128; accord ATSI

Commc'ns, 493 F.3d at 99.

To qualify as "strong," "the inference of scienter must be more than merely

'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of

other explanations." Tellabs, 127 S. Ct at 2510.  The court must consider the inferences

urged by the plaintiff and the competing inferences rationally drawn from the facts

alleged. Id. at 2509-10.  "A complaint will survive, we hold, only if a reasonable person

would deem the inference of scienter cogent and at least as compelling as any opposing

inference one could draw from the facts alleged." Id. at 2510.

Rule 9(b) imposes additional limitations.  First, a pleader cannot allege fraud

based upon information and belief unless the facts are "peculiarly within the opposing

party's knowledge." Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir.

1974), cert. denied, 421 U.S. 976 (1975), overruled on other grounds by Virginia

Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1100 n.9 (1991); accord Campaniello

Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997).  In those cases, the

pleader must nonetheless allege facts upon which the belief is founded.  Campaniello

Imps., 117 F.3d at 664; Schlick, 507 F.2d at 379.  Second, and except in limited

---

fraud claims.  See Serova v. Teplen, No. 05 Civ. 6748(HB), 2006 WL 349624, at *8 (S.D.N.Y. Feb. 16,
2006).

circumstances that are not present here,[8] group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing.  DiVittorio v. Equidyne Extractive Indus. Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 286 (S.D.N.Y. 1998)("The pleading must give notice to each opposing party of its alleged misconduct.  Thus, a claim may not rely upon blanket references to acts or omissions by all the defendants, for each defendant named is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he is individually charged.").

**B.      Fraudulent Transfer Claims for Relief (Counts 1 through 6)**

   **1.      First Claim for Relief**

The First Claim for relief seeks to recharacterize Best Buy's debt as equity.

> [T]he characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else.  That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances.

Cohen v. KB Mezzanine Fund II, L.P. (In re SubMicron Sys. Corp.), 432 F.3d 448, 456 (3d Cir. 2006).  The Equity Scenario implies that when Best Buy was making its cash contributions to Musicland, both sides understood and intended that Best Buy was investing equity.  By 2003, Best Buy was looking for a way to extract some of its investment from Musicland, but Musicland was insolvent and could not return any

---

[8]      The exception relates to fraud claims concerning offering memoranda or written solicitations.  The plaintiff need not show a connection between the fraudulent representations and a particular defendant where the defendants are insiders or affiliates that participated in the offer.  DiVittorio v. Equidyne Extractive Indus. Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)(quoting Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir. 1986)); In re GeoPharma, Inc. Secs. Litig., 411 F.Supp.2d 434, 451 (S.D.N.Y. 2006).

equity.  The Debt Instruments were created to paper over Best Buy's equity to make it look like debt.

The timing was suspicious.  During the two-and-one-half years that Best Buy contributed cash to Musicland, it had never imposed any repayment terms.  (¶ 95.)  Furthermore, it appears that the First Transfer was made without regard to the provisions of the Loan Agreement and Original Note.  The principal amount of the revolver debt was due on the "Termination Date," defined as the earlier of February 28, 2009, the date of any acceleration based on an "Event of Default" or the date that the "Lender" demands payment.  (Stock Purchase Agreement, Ex. 29A, at §§ 1.21, 2.5)  Prior to the Termination Date, interest was payable annually, beginning on February 28, 2004.  (Id., at § 2.4.)  Thus, absent an acceleration or demand by Best Buy, no payment was due until February 28, 2004.  Musicland nonetheless paid over $110 million under the Loan Agreement and Original Note prior to June 16, 2003.  The Amended Complaint implies that the parties never intended the Loan Agreement and Original Note as anything more than window dressing to cover the return of Best Buy's equity.

Best Buy's motion to dismiss does not challenge the sufficiency of these allegations.  Instead, it maintains that the Court cannot grant any relief because Best Buy has not asserted a claim against Musicland under the Debt Instruments.  (Memorandum of Law in Support of the Defendants' [Best Buy and the Pre-Sale Individual Defendants] Motion to Dismiss the Adversary Complaint Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6), dated Apr. 25, 2008, at 12-14 ("Best Buy Memo"))(ECF Doc. # 22.)  In Best Buy's view, this renders the recharacterization claim academic.

Although Best Buy has not asserted a claim against the Musicland estates, the validity of the Debt Instruments is still relevant.  The recharacterization claim, in this regard, is essentially one to declare the Debt Instruments void, and is integral to the fraudulent transfer claims.  The Equity Scenario posits that the Debt Instruments did not evidence a true debt because Best Buy made capital contributions, not loans.  They were executed as part of a scheme to paper Best Buy's contributions as loans, and were fraudulent obligations within the meaning of the fraudulent transfer laws.  Further, if the obligations were fraudulent, the Transfers made in partial satisfaction of the bogus debts did not constitute exchanges for reasonably equivalent value.  See Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.), 394 B.R. 721, 732 (Bankr. S.D.N.Y. 2008).

Accordingly, the plaintiff must invalidate the Debt Instruments under his Equity Scenario, even though Best Buy no longer owns them, to recover the corresponding Transfers to Best Buy.  See id.  The recharacterization claim should, therefore, be read as a claim to avoid the Debt Instruments as fraudulent obligations under the fraudulent transfer laws.  Viewing the First Claim for Relief in this light, it states a right to relief under the fraudulent transfer laws discussed next.

### 2.    Second, Third and Fourth Claims for Relief

The Second, Third and Fourth Claims for Relief are based on Minnesota's fraudulent transfer law,[9] made available to the plaintiff through 11 U.S.C. § 544(b).  The pertinent provision, Minn. Stat. § 514.44, states:

---

[9]    All sides have discussed Minnesota law and agree that Minnesota law governs the fraudulent transfer claims.

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Best Buy contends that these claims must be dismissed because they do not plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The Third and Fourth Claims for Relief are based, respectively, on § 514.44(a)(2)(i) and (ii). Actual intent to defraud is not an element of these claims, as it is under § 514.44(a)(1). The Third and Fourth Claims sound in constructive fraudulent transfer, and Rule 9(b) of the Federal Rules of Civil Procedure does not apply. Fabrikant, 394 B.R. at 735; Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.), 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005)(collecting cases).[10]

---

[10]   Best Buy's attack on the constructive fraudulent transfer claims is based on two errors of the law set out in a lengthy footnote.  (See Best Buy Memo, at 9 n.5.)  First, it confuses a claim of constructive fraud with a claim of constructive fraudulent transfer, and cites Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245 (S.D.N.Y. 2008), a constructive fraud case, for the proposition that Rule 9(b) applies to constructive fraudulent transfer claims.  A constructive fraud claim has the same elements as a fraud claim, except that the element of scienter is replaced by a confidential or fiduciary relationship.  Burrell v. State Farm & Cas. Co., 226 F. Supp. 2d 427, 438 (S.D.N.Y. 2002).  The constructive fraud claim still requires, among other things, a false statement that must be alleged with particularity.  In contrast, a constructive fraudulent transfer claim does not include any elements of fraud.

Second, Best Buy argues that Rule 9(b) applies to constructive fraudulent transfer claims under Eighth Circuit law, and cites to a decision of the Minnesota district court that applied Rule 9(b) to a constructive fraudulent claim under the Minnesota Fraudulent Transfer Act.  Equating the pleading rules in

The Second Claim for Relief is based on actual fraud, and must satisfy Rule 9(b).
Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43,
56 (2d Cir. 2005); Atlanta Shipping Corp., Inc. v. Chem. Bank, 818 F.2d 240, 251 (2d
Cir. 1987); Fabrikant, at 394 B.R. at 733; Nisselson v. Drew Indus., Inc. (In re White
Metal Rolling & Stamping Corp.), 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998).  Best Buy
contends that the claim fails to plead scienter, but I disagree.  The Amended Complaint
alleges that Best Buy invested over $800 million in Best Buy, but was unable to find a
buyer that would pay enough to allow Best Buy to recover any part of its equity.  (¶ 35;
see ¶ 42.)  Its only hope was to induce Musicland to treat its equity as debt, and repay
some or all of it.  This supplied a motive.

Best Buy was able to carry out its plan because it controlled Musicland.
Musicland was a wholly owned subsidiary of Best Buy, and all but one of Musicland's
officers and directors (Muehlbauer was the exception) were also officers, directors and/or
employees of Best Buy at the relevant times.  (See ¶¶ 42, 43.)  This provided Best Buy
with the opportunity to cause Musicland to execute the Debt Instruments and make the
Transfers.  Based on the foregoing, the Second Claim for Relief adequately pleads
scienter.

Accordingly, the motion to dismiss the Second, Third and Fourth Claims for
Relief is denied.

---

the Eighth Circuit with Minnesota substantive state law, Best Buy then reasons that under the relevant
conflict of law rules this Court must apply the law of Minnesota and require that constructive fraudulent
transfer claims satisfy Rule 9(b).  It is well settled that where the rights of parties are based on the law of
another jurisdiction, the court follows the substantive law of that jurisdiction but applies its own rules of
procedure.  Bournias v. Atl. Maritime Co., 220 F.2d 152, 154 (2d Cir. 1955).  Thus, the Federal Rules of
Civil Procedure govern the pleading of the fraudulent transfer claims based on Minnesota law, and the
Court looks to the decisions of the Supreme Court of the United States and the courts in the Second Circuit
for the appropriate standard.

### 3.    The Fifth and Sixth Claims for Relief

The Fifth and Sixth Claims are based, respectively, on Minn. Stat. § 513.45(a) and

(b), which provide:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the obligation
> was incurred if the debtor made the transfer or incurred the obligation
> without receiving a reasonably equivalent value in exchange for the
> transfer or obligation and the debtor was insolvent at that time or the
> debtor became insolvent as a result of the transfer or obligation.

> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim
> arose before the transfer was made if the transfer was made to an insider
> for an antecedent debt, the debtor was insolvent at that time, and the
> insider had reasonable cause to believe that the debtor was insolvent.

Best Buy contends that the plaintiff lacks standing to assert these claims.  Only

existing creditors (i.e., "a creditor whose claim arose before the transfer was made or the

obligation was incurred") can assert a fraudulent transfer claim under § 513.45.[11]  In

addition, 11 U.S.C. § 544(b)(1) provides, in pertinent part, that a trustee may avoid any

obligation or transfer "that is voidable under applicable law by a creditor holding an

unsecured claim that is allowable under section 502 of this title."  Reading § 513.45 and

11 U.S.C. § 544(b) together, only a creditor existing at the time the Debt Instruments or

Transfers were made or incurred can avoid them under state law, and that creditor must

also hold an allowable claim in the bankruptcy case.  If no such creditor exists, the

plaintiff lacks standing to assert the Fifth and Sixth Claims for Relief.  See Shearson

Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991)("[T]he 'case or

controversy' requirement coincides with the scope of the powers the Bankruptcy Code

gives a trustee, that is, if a trustee has no power to assert a claim because it is not one

---

[11]    In contrast, § 513.44 renders the transfer or obligation void as to both present and future creditors.

belonging to the bankrupt estate, then he also fails to meet the prudential limitation that

the legal rights asserted must be his own.").

       While these propositions are not subject to dispute, the parties differ over what

must be pleaded.  Best Buy contends that the Amended Complaint must identify an

actual, qualifying creditor to survive a motion to dismiss for lack of standing.[12]  (Best

Buy Memo, at 15.)  The plaintiff argues that it is sufficient, for pleading purposes, to

allege the existence of the qualifying creditor generally without identifying the actual

entity.  (Brief of Plaintiff The Responsible Person of Musicland Holding Corp. in

Opposition to Defendants' Motions to Dismiss the Amended Adversary Proceeding

Complaint, dated June 10, 2008, at 38-39)(ECF Doc. # 34.)

       This issue has divided the courts.  E.g., Global Crossing Estate Representative v.

Winnick, No. 04 Civ. 2558(GEL), 2006 WL 2212776, at *10 (S.D.N.Y. Aug. 3,

2006)("Courts are divided on whether a complaint must specifically identify the creditor

in whose shoes the trustee (or in this case, the Estate Representative) is bringing suit, or if

that fact is simply a matter for trial."); Geron v. Schulman (In re Manshul Constr. Corp.),

No. 97 CIV. 8851(JGK), 2000 WL 1228866, at *44 (S.D.N.Y. Aug. 30, 2000)("Courts

disagree as to whether a trustee is required to establish the existence of a specific creditor

in order to have standing under Section 554(b)[sic].");  compare Kaliner v. Load Rite

Trailers, Inc. (In re Sverica Acquisition Corp ., Inc.), 179 B.R. 457, 465 (Bankr. E.D. Pa.

1995) (allegation "that '[a]t the time of the 1990 leveraged buy-out, an unsecured creditor

---

[12]       Best Buy could have made the same argument with respect to the Second, Third and Fourth
Claims for Relief, which also depends on 11 U.S.C. § 544(b).  However, future creditors may invoke §
513.44, and Best Buy probably assumed that creditors holding allowable claims against the Musicland
estate also qualified as future creditors under § 513.44.

of the Debtor existed' . . . is insufficient to satisfy even the minimal pleading

requirements of Fed. R. Civ. P. 8 since it fails to adequately place Defendants on notice

of whose rights the Trustee is claiming under.  Such notice is imperative here because the

Trustee's rights under Code § 544(b) are derivative of whatever rights the alleged

creditor had under state law.  It is crucial therefore that Defendants have proper notice of

the identity of the alleged creditor in order that they might confirm or deny the validity of

that entity's claim.") and Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101,

1148 (C.D. Cal. 2003)("Unless Neilson is required to allege specifically the identity of

the unsecured creditor(s) whose rights he is asserting, defendants will have no way to

'assess[ ] the initial strength of [his] claim, . . . preserv[e] relevant evidence, . . . identify[

] any related counter- or cross-claims, and . . . prepar[e] an appropriate

answer.'")(alteration in original)(citation omitted) with Zahn v. Yucaipa Capital Fund,

218 B.R. 656, 673-74 (D. R.I. 1998)("The Complaint clearly satisfies the requirements of

Rules 8 and 9(b).... Plaintiff's failure to name an existing creditor is of no moment, for he

is not required to prove his case at this point; his allegation that such a creditor exists

suffices."); Guiliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc), 339

B.R. 570, 576 (Bankr. D. Del. 2006)("The Court agrees with the Trustee and those cases

which hold that the Trustee need not identify the name of a specific creditor on which the

Trustee relies.  The Trustee must eventually prove the existence of a specific creditor

whose claim existed at the time of the alleged overpayments and on the petition date, but

is not required to do so at this stage in the process.") and Brandt v. Hicks, Muse & Co.

(In re Healthco Int'l, Inc.), 195 B.R. 971, 980 (Bankr. D. Mass. 1996)("[T]he Trustee

alleges he represents 'at least one qualified, unsecured creditor holding an allowable

unsecured claim which existed at the time of the LBO . . . .'  Under the liberal rule of notice pleading, that allegation is enough.").

The few decisions in this district reject the requirement to plead the names of actual, qualifying creditors.  In <u>Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.</u>), 178 B.R. 938 (Bankr. S.D.N.Y. 1995), the managers of Kayser-Roth formed the debtor, Wingspread, to buy Kayser-Roth through a leveraged buy out, or LBO. Wingspread borrowed the funds to finance the LBO, and transferred the proceeds to Kayser-Roth.  Post-petition, the trustee brought a fraudulent conveyance action to avoid the obligations and transfers under the New York Debtor & Creditor law, and recover their value for the estate.

The complaint did not identify any actual, qualifying creditor, and instead, based the trustee's standing on the presence of "'unsecured creditors of Kayser-Roth and/or its subsidiaries that continued to be unsecured creditors of Wingspread and/or its subsidiaries.'"  <u>Id.</u> at 945.  During discovery, the trustee identified certain categories of qualifying creditors (<u>i.e.</u>, the unsecured creditors that were scheduled or listed on the claims register), as well as specific creditors.  <u>Id.</u>  The parties filed summary judgment motions, and the defendants argued that the trustee could not maintain the action because he could not identify an actual, qualifying creditor.

The Court initially viewed the issue as a pleading question.  <u>Id.</u> at 945-46 ("The specific issue with which I must deal is whether the mere allegation of various unsecured creditors is sufficient to invoke section 544(b), or whether the Trustee must allege the existence of a specific unsecured creditor who would have standing to bring the action.").

The Court agreed that the plaintiff had to name an actual unsecured creditor with standing, id. at 946, but did not dismiss the complaint even though the trustee had failed to do so.  Instead, the Court applied a summary judgment standard, and declined to dismiss the complaint.  Wingspread had hundreds of trade creditors, one or more might qualify for standing purposes, but these factual issues could not be resolved on a summary judgment motion.  Id. at 946.  Similarly, the Court noted that there were factual issues concerning some of the specifically identified creditors.  Id.

Accordingly, the trustee would have to prove "at trial" the existence of at least one qualifying creditor who could have challenged the transfer under non-bankruptcy law.  Id.  Thus, although the court first framed the issue as one of pleading, Wingspread must be read to mean that the complaint does not have to name the qualifying creditor, and instead, it is sufficient to prove the creditor's existence at trial.

In In re RCM Global Long Term Capital Appreciation Fund, Ltd., 200 B.R. 514 (Bankr. S.D.N.Y. 1996), the debtor, an investment fund, filed a chapter 11 case after its broker (Daiwa) set off all of the debtor's capital against the obligation of its affiliate. Daiwa moved to dismiss the petition, or alternatively, for relief from the automatic stay, contending that the petition was filed in bad faith.  Id. at 516.  One of the purposes of the chapter 11 was to allow the debtor to bring a fraudulent conveyance action, something it could not do outside of bankruptcy.  See id. at 519.  The debtor eventually filed the action, relying, in part, on the New York Debtor & Creditor Law.  The complaint alleged, in general terms, that as of the date of the transfer, the debtor had one or more creditors holding unsecured claims against it.  Id.  Daiwa responded that the debtor had no qualifying creditors who could have challenged the transfer.  Id. at 522.

The court ruled that it would apply the same standard to the argument that it would apply to a motion by Daiwa to dismiss the complaint.  Id. at 523-24.  It concluded that the complaint was sufficient because "[t]he Debtor has adequately pleaded the existence of an unsecured creditor with an allowable claim.  Whether the proof will conform to the complaint is a matter for another day."  Id. at 524.  Thus, RCM supports the proposition that the plaintiff may plead the existence of the qualifying creditor generally, and prove the existence of an actual, qualifying creditor at trial.

Finally, in Global Crossing Estate Representative v.Winnick, 2006 WL 2212776, the District Court took an intermediate approach that still fell far short of the standard urged by Best Buy.  There, the complaint identified a category of creditors – noteholders that had engaged in an exchange offer, still held the exchange notes and were creditors in the bankruptcy – with standing under applicable non-bankruptcy law to challenge the transaction.  See id. at *11.  Rejecting the defendant's argument that that the Estate Representative must specifically identify "one such creditor" because "it has had access to the proofs of claim filed by all creditors," the District Court ruled:

> However, there is no authority for the proposition that the Estate
> Representative must be more specific than to identify the category of
> creditors with potentially viable claims.  This is unquestionably enough to
> put defendants on notice of the creditors who supply the basis for the right
> to sue, and will permit them to answer, seek relevant discovery, and
> defend against these claims . . . .

Id.

The Court has not been able to locate a case in this district supporting the proposition that the plaintiff must name the qualifying creditor in the complaint, or suffer dismissal.  Furthermore, Best Buy has failed to articulate a rationale for imposing a heightened pleading standard on claims governed by the more liberal pleading

requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires

a "short and plain statement of the claim showing that the pleader is entitled to relief,"

and "must simply 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'"  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512

(2002)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  "This simplified notice

pleading standard relies on liberal discovery rules and summary judgment motions to

define disputed facts and issues and to dispose of unmeritorious claims."  <u>Swierkiewicz</u>,

534 U.S. at 512.

Here, the Fifth and Sixth Claims allege that "[t]here exists one or more creditors

of the Debtors (including, without limitation, landlords, taxing authorities and trade

creditors) whose claim(s) arose prior to the Cash Transfers and the execution of the Debt

Instruments, and who have claims against the Debtors' estates as of the Petition Date."

(¶¶ 116, 122.)  These allegations specifically identify three categories of unsecured

creditors that purport to trigger the plaintiff's standing.  They satisfy <u>RCM</u>'s standard,

and also meet the stricter "category" standard articulated in <u>Global Crossing</u>.  The

identification provides fair notice of how the plaintiff intends to prove his standing, and

allows Best Buy to take discovery.[13]

Best Buy also contends that the Fifth and Sixth Claims for Relief fail to satisfy the

pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure.  These

counts assert claims to avoid constructive fraudulent transfers, and Rule 9(b) does not

---

[13]    The plaintiff's opposition included numerous proofs of claim that identified potential qualifying
creditors.  (<u>See</u> <u>Declaration of Robert J. Malatak</u>, dated June 10, 2008, at Ex. D)(ECF Doc. # 35.)  I have
not considered the proofs of claim as amplifying the allegations of the Amended Complaint because this is
a Rule 12(b)(6) motion and because no amplification is necessary.  Nevertheless, the plaintiff's production
demonstrates the relative ease and obvious wisdom of leaving the actual identification of qualifying
creditors to discovery and trial.

apply.  Even if it did, the two counts incorporate the earlier allegations, and satisfy Rule

9(b) for the same reason as the Second Claim for Relief.

Accordingly, Best Buy's motion to dismiss the Fifth and Sixth Claims for Relief

is denied.

## C.      Rescission Claims for Relief (Counts 10 through 12)

### 1.  Standing

The plaintiff seeks to rescind the Debt Instruments through the Tenth, Eleventh

and Twelfth Claims for Relief based, respectively, on unilateral mistake, mutual mistake

and fraud.  According to Best Buy, the plaintiff does not represent any entity that was a

party to the Debt Instruments.  (Best Buy Memo, at 27-28.)  Best Buy is mistaken.  TMG

and Best Buy were the parties to the Debt Instruments, and TMG is a debtor in this case.

TMG had standing to bring these rescission claims under non-bankruptcy law, and the

plaintiff has standing under the Confirmation Order and the Plan as the representative of

the TMG estate.

### 2.  Estoppel

Best Buy next contends that the plaintiff is estopped from asserting his rescission

claims because he and his predecessors failed to seek rescission promptly.[14]  An action

for rescission based on fraud or mistake must follow "promptly" upon discovery of the

grounds therefor, Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,

850 F. Supp. 1199, 1210-11 (S.D.N.Y. 1994), aff'd, 57 F.3d 146 (2d Cir. 1995), unless

---

[14]      At oral argument, Best Buy's counsel also asserted that the plaintiff's inability to make restitution
barred the rescission claims.  This contention was not briefed, and in light of the dismissal of the rescission
claims, it need not be addressed.

the delay is caused by the plaintiff.  <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 47

(2d Cir. 1991).  The "requirement of promptness is . . . an element of a <u>prima facie</u>

rescission action and the burden of proof is on plaintiff."  <u>In re Schick</u>, 232 B.R. 589, 596

(Bankr. S.D.N.Y. 1999)(internal quotation marks and citations omitted).  "Whether the

Claimants acted with reasonable promptness must be determined from all the surrounding

circumstances, including when the party seeking rescission first knew of the fraud."  <u>Id.</u>

(internal citations omitted).

The determination of promptness is inherently factual, and cannot be resolved on

a motion to dismiss for failure to state a claim.  Consequently, the Court rejects the

argument that the plaintiff is estopped as a matter of law from asserting his rescission

claims.

### 3.      Rule 9(b)

Best Buy contends that the Tenth, Eleventh and Twelfth Claims fail to plead fraud

or mistake with particularity.  The party asserting a rescission claim based on mistake

must particularize (1) the mistake (2) the identity of the individuals that made the

mistake, (3) the nature of their misunderstanding, and (3) when and where the mistake

occurred.  <u>See</u> <u>Mills v. Everest Reinsurance Co.</u>, 410 F. Supp. 2d 243, 248 (S.D.N.Y.

2006); 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 9.03[2], at 9-30 (3d ed.

2008)(party must allege the "'who, what, where, when and how' of mistake"); 5A

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §

1299, at 264 (3d ed. 2004)("A well-pleaded claim grounded on mistake should include

averments of what was intended, what was done, and how the mistake came to be

made.")

27

Although the Amended Complaint particularizes the mistake, the Tenth and

Eleventh Claims are nonetheless implausible.  The plaintiff contends that TMG entered

into or signed the Debt Instruments in the mistaken belief "that the monetary

contributions Best Buy made to, or on behalf of, Musicland constituted loans (i.e., debt,

not equity."  (¶¶ 142, 152.)  The defendant James L. Muehlbauer signed the Loan

Agreement and the Original Note.  (Stock Purchase Agreement, Ex. 29A, at

BBY0000661; Ex. 29B, at BBY0000663.)  The defendant David Berg signed the

Amended Note.[15]   (See Stock Purchase Agreement, Ex. 29B, at BBY0000667.)

The claim of mistake is directly contradicted by other allegations in the Amended

Complaint.  Counts 10 and 11 incorporate the allegation, (see ¶¶ 141, 151), that "Best

Buy, through and with the knowing assistance of . . . Berg . . . and Muehlbauer, devised a

plan designed to give the appearance that its equity investments were loans, i.e., debt, in

the hope of salving [sic] some return on its huge investment in Musicland."  (¶ 42.)  In

short, they understood the nature of Best Buy's investment.  "[A] court need not feel

constrained to accept as truth conflicting pleadings that make no sense, or that would

render a claim incoherent, or that are contradicted either by statements in the complaint

itself or by documents upon which its pleadings rely."  Rieger v. Drabinsky (In re Livent,

Inc. Noteholders Secs. Litig.), 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); accord

Tierney v. Omnicom Group Inc., No. 06 Civ. 14302(LTS)(THK), 2007 WL 2012412, at

*4 (S.D.N.Y. July, 11, 2007).

Accordingly, the Tenth and Eleventh Claims are dismissed for failure to state a

claim upon which relief can be granted.  See Global Crossing Telecomm., Inc. v. CCT

---

[15]      The signature on the Second Amended Note is illegible.  (See Stock Purchase Agreement, Ex. 35.)

Commc'ns, Inc. (In re CCT Commc'ns, Inc.), No. 07-1942A (SMB), 2008 WL 2705471,

at *14 (Bankr. S.D.N.Y. July 2, 2008)(dismissing claim based on mutual mistake that

incorporated earlier allegation that mistaken party knew the truth).

### 4.    Twelfth Claim for Relief

The Twelfth Claim seeks rescission based on fraud.  Best Buy argues that the

Amended Complaint fails to plead fraud with particularity.  To satisfy Rule 9(b), a fraud

claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain

why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170,

1175 (2d Cir. 1993); accord Burrell v. State Farm & Cas. Co., 226 F. Supp. 2d 427, 438

(S.D.N.Y. 2002).  The Amended Complaint alleges that "[t]o induce TMG to enter into

and/or make the Debt Instruments, Best Buy represented to TMG that the monetary

contributions it made to, or on behalf of, Musicland constituted loans (i.e., debt), not

equity."  (¶ 158.)

These allegations fail to plead the particular misstatements, who made them and

when and where they were made.  In addition, the allegation of justifiable reliance is

implausible, (see ¶ 162), since Muehlbauer and Berg knew the truth but signed the Loan

Agreement, Original Note and Amended Note anyway.  Accordingly, the Twelfth Claim

is dismissed for failure to state a claim upon which relief can be granted and failure to

satisfy Rule 9(b) of the Federal Rules of Civil Procedure and for failure to state a claim

upon which relief can be granted..

**D.        Illegal Dividends (Seventh Claim for Relief)**

**1.        Failure to State a Claim**

The Seventh Claim seeks to impose liability for the Transfers against the Pre-Sale Individual Defendants (other than Berg, Freeland and Muehlbauer), and against the Post-Sale Individual Defendants on account of the Second Transfer, to the extent that the Transfers are deemed to be dividends.  It is well settled that an insolvent Delaware corporation cannot pay a dividend, EBS Litig. LLC v. Barclays Global Investors, N.A., 304 F.3d 302, 305 (3rd Cir. 2002); see DEL. CODE ANN., tit. 8, § 170(a)(corporation may pay dividends only out of surplus or net profits for the year in which the dividend is declared or the preceding year) and § 173 ("No corporation shall pay dividends except in accordance with this chapter."), and the corporation's directors may be held personally liable if it does.  Under § 174(b) of the Delaware General Corporation Law:

> (a) In case of any wilful or negligent violation of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued. Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may be exonerated from such liability by causing his or her dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after such director has notice of the same.

DEL. CODE ANN., tit. 8, § 174(a).

The Individual Defendants contend[16] that the allegations that the Transfers were dividends are conclusory.  They are, however, sufficient for the reasons stated in connection with the recharacterization claim.  The Amended Complaint avers that the Debt Instruments were created to facilitate the repayment of a portion of Best Buy's equity investment.  If the Debt Instruments represented equity, any payments made in connection with the Debt Instruments represented dividends rather than the repayment of legitimate debt.  The Court looks to the substance, not the form, of the transaction, and the allegations are sufficient to state a claim that the Transfers were actually dividends.  See AT&T Corp. v. Walker, No. C04-5709FDB, 2006 WL 2927659, at *2 (W.D. Wash. Oct. 12, 2006)("[T]he substantive economic effect of a particular transaction that depletes the debtor's assets and transfers them to shareholders may be actionable as unlawful dividends.")(applying Delaware law); see Official Comm. of Unsecured Creditors of Buckhead Am. Corp. v. Reliance Capital Group, Inc. (In re Buckhead Am. Corp.), 178 B.R. 956, 970 (D. Del. 1994)("Courts which have previously addressed the application of [statutes similar to DGCL §§ 160 and 173] to LBO transactions have rejected arguments which concentrate on the form of the transaction rather than its substantive economic effect")(internal quotations marks and citation omitted); Crowthers McCall Pattern, Inc. v. Lewis, 129 B.R. 992, 1000-01 (S.D.N.Y. 1991)(denying a motion to dismiss a claim for unlawful dividends under Delaware law and stating that the court must concentrate on the economic substance of the transaction rather than its form).

---

[16]     Except as noted, the two sets of Individual Defendants have adopted each other's arguments in support of their motions to dismiss the Seventh and Eighth Claims.

## 2.    Failure to Identify a Qualifying Creditor

Next, the Individual Defendants repeat the argument, discussed earlier, that the Amended Complaint fails to identify an actual creditor that could assert the unlawful dividend claim. This argument misconstrues the nature of the claim. Section 174(a) of the Delaware General Corporation Law gives the unlawful dividend claim "to the corporation, and to its creditors in the event of its dissolution or insolvency." The unlawful dividend claim is not an avoidance claim that the trustee must assert, if at all, under 11 U.S.C. § 544(b), even if the same transfer also gives rise to a fraudulent conveyance. Instead, it imposes statutory liability on directors who may or may not also be transferees.

Although the creditors of the insolvent corporation acquire standing to assert the unlawful dividend claim, it remains derivative rather than direct. The creditor may not recover its unpaid claim directly from the director. John A. Roebling's Sons Co. v. Mode, 43 A. 480, 481 (Del. 1899)(decided under predecessor statute). In the absence of bankruptcy, a representative that extended credit prior to the unlawful dividend may assert the claim as a class action for the full amount of the unlawful dividend. See Johnston v. Wolf, 487 A.2d 1132, 1136 (Del. 1985); 1 LOUIS J. FINGER, BALOTTI AND FINKELSTEIN'S DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 5.32 (3d ed. 2008), available at DELCBO § 5.32 (Westlaw). Once bankruptcy ensues, the unlawful dividend claim becomes property of the corporation's estate under 11 U.S.C. § 541 for the trustee to assert. See AT&T Corp. v. Walker, No. C04-5709FDB, 2006 WL 2938783, at *3 (W.D. Wash. Sept. 11, 2006)("The power to bring an action for unlawful dividends upon bankruptcy under 8 Del. Code Ann. § 173 belongs to the

32

trustee, as such an action is derivative in nature, alleging general damage, not

particularized injury to a single creditor."); Hall v. Sunshine Mining Co. (In re Sunshine

Precious Metals, Inc.), 157 B.R. 159, 164 (Bankr. D. Idaho 1993)(Section 174(a) of the

Delaware Corporation Law is a derivative claim that the trustee has standing to assert.).

###    3.    Delaware General Corporation Law § 172

The Individual Defendants contend that they have a complete defense to the

unlawful dividend claim under § 172 of the Delaware General Corporation Law.  Section

172 states:

> A member of the board of directors, or a member of any committee
> designated by the board of directors, shall be fully protected in relying in
> good faith upon the records of the corporation and upon such information,
> opinions, reports or statements presented to the corporation by any of its
> officers or employees, or committees of the board of directors, or by any
> other person as to matters the director reasonably believes are within such
> other person's professional or expert competence and who has been
> selected with reasonable care by or on behalf of the corporation, as to the
> value and amount of the assets, liabilities and/or net profits of the
> corporation or any other facts pertinent to the existence and amount of
> surplus or other funds from which dividends might properly be declared
> and paid, or with which the corporation's stock might properly be
> purchased or redeemed.

DEL. CODE ANN., tit. 8, § 172.

Section 172 is an affirmative defense that the defendants must plead and prove.

Sheffield Steel Corp. v. HMK Enters., Inc. (In re Sheffield Steel Corp.), 320 B.R. 423,

451 (Bankr. N.D. Okla. 2004); see AT&T Corp., 2006 WL 2927659, at *2.

Consequently, it does not provide a ground to dismiss for failure to assert a claim upon

which relief may be granted.  Cf. Manzo v. Rite Aid Corp., No. Civ. A. 18451-NC, 2002

WL 31926606, at *3 n.7 (Del. Ch. Dec. 19, 2002)(protections of Delaware Corporation

Code § 141(e) are affirmative defenses that do not affect a ruling on a motion to dismiss.).

### 4.    The Business Judgment Rule

The Individual Defendants make a related argument that the business judgment rule provides a complete defense to the Seventh Claim.  The business judgment rule is discussed in greater depth below.  For present purposes, it suffices to say that it does not provide a defense to an unlawful dividend claim.  Section 174(a) imposes a form of strict liability without regard to any action or inaction by a particular director.  The Individual Defendants have not cited a case that applied the business judgment rule to a statutory claim under § 174(a).  To the contrary, the business judgment rule does not apply because the payment of an unlawful dividend is an illegal act.  See Pereira v. Cogan, 294 B.R. 449, 531 n.76 (S.D.N.Y. 2003), vacated & remanded on other grounds sub nom., Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005), cert. denied, 547 U.S. 1147 (2006).

### 5.    The Post-Sale Individual Defendants

Krouse and Leder make the separate argument that they cannot be liable under § 174(a).  Focusing on the timing of the Second Transfer, they contend that if the Second Transfer was made before the closing of the sale to Sun, they would not have been directors and could not be liable under § 174(a).  If, on the other hand, the Second Transfer was made after the closing, the payments could not be dividends because Best Buy was no longer a shareholder.

As stated earlier, the Second Transfer was apparently made after the sale to Sun on account of the equity invested by Best Buy.  Krouse and Leder have not suggested

34

what the Second Transfer should be considered under the Equity Scenario if it not a

dividend, and do not cite any authority for their argument.  For the reasons already

discussed, the Amended Complaint states a claim that Best Buy invested equity, and did

not make loans.  The Debt Instruments reflected that investment, and the transfers on

account of the Debt Instruments were dividends.  Since the Second Transfer was made at

a time when the Post-Sale Individual Defendants were Musicland directors, the Amended

Complaint states an unlawful dividend claim against them as well.

Accordingly, the motions to dismiss the Seventh Claim for Relief are denied.

**E.      Breach of Fiduciary Duty (Eighth Claim for Relief)**

The Eighth Claim alleges that Musicland was insolvent or in the zone of

insolvency at the relevant times, and the Individual Defendants, therefore, owed fiduciary

duties to Musicland and its creditors.  (¶¶ 133, 134.)  They breached their fiduciary duties

by, among other things, intentionally or knowingly permitting Musicland to enter into or

make the Debt Instruments and/or the Transfers, continuing to receive compensation

from Musicland, Best Buy and/or Sun, continuing to operate Musicland's business in

order to benefit Best Buy, consciously abdicating their duties to Musicland and its

creditors and acting only in the interests of Best Buy and/or Sun.  (¶ 135.)  The parties

agree that Delaware law governs the breach of fiduciary duty claim.

### 1.      Lack of Standing

The Individual Defendants first contend[17] that the plaintiff lacks standing to assert

a breach of fiduciary duty claim because no creditor can assert the breach of fiduciary

duty claim under applicable non-bankruptcy law.  The claim for breach of fiduciary duty

is derivative under Delaware law, and constitutes property of the estate under 11 U.S.C. §

541.  Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.), 194 B.R. 318,

327-28 (Bankr. S.D.N.Y. 1996).  Consequently, the plaintiff, as representative of the

Musicland estates, has standing to assert it.

### 2.      The Absence of a Duty

Next, the Individual Defendants maintain that they did not owe fiduciary duties to

Musicland or its creditors.  Under Delaware law, in order to bring a claim for breach of

fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty and (2) a

breach by the fiduciary of that duty.  Pereira v. Cogan, No. 00 CIV. 619(RWS), 2001 WL

243537, at *12 (S.D.N.Y. Mar. 8, 2001); York Linings v. Roach, No. 16622-NC, 1999

WL 608850, at *2 (Del. Ch. July 28, 1999).  Ordinarily, the directors of a wholly owned

subsidiary "are obligated only to manage the affairs of the subsidiary in the best interests

of the parent and its shareholders."  Anadarko Petrol. Corp. v. Panhandle E. Corp., 545

A.2d 1171, 1174 (Del. 1988).  However, once the subsidiary enters the zone of

insolvency, the directors (and officers) owe their fiduciary duties to the entire community

of interests, including the creditors.  Claybrook v. Morris (In re Scott Acquisition Corp.),

344 B.R. 283, 290 (Bankr. D. Del. 2006); Official Comm. of Unsecured Creditors of

---

[17]      With one exception, the Individual Defendants did not contend in their moving memoranda that
the allegations of the Eighth Claim failed to satisfy Rule 8(a) or Rule 9(b) of the Federal Rules of Civil
Procedure.  The exception concerns "pleading around" the business judgment rule, and is discussed in the
succeeding text.

Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 471-72 (Bankr.

S.D.N.Y. 2006)(applying Delaware law).

The Defendants contend that the Amended Complaint fails to allege insolvency.

Under Delaware law, the plaintiff must plead facts that show either "(1) a deficiency of

assets below liabilities with no reasonable prospect that the business can be successfully

continued in the face thereof, or (2) an inability to meet maturing obligations as they fall

due in the ordinary course of business." Prod. Res. Group, L.L.C. v. NCT Group, Inc.,

863 A.2d 772, 782 (Del. Ch. 2004)(internal quotation marks omitted).

The allegations in the Amended Complaint imply that Musicland could not pay its

debts as they came due.  First, Musicland sustained repeated and increasing losses during

the period 2001 through March 31, 2003.  (¶ 36.)  Best Buy tried to sell Musicland, but

could not obtain a purchase price that would repay any part of its equity.  (¶¶ 38, 39.)

Second, Musicland could not pay its debt to Best Buy in accordance with its

terms.  As part of the June 16, 2003 transactions, TMG executed the Amended Note in

the principal balance of $235,870,784.[18]   The balance plus all accrued interest was

immediately due and payable.  (See Stock Purchase Agreement, Ex. 29B, at

BBY0000665.)  Musicland did not satisfy the Amended Note.  Instead, Best Buy

accepted $35 million and a Second Amended Note, also immediately due and payable, in

the amount of $30 million.  (Id., Ex. 35, at BBY0000695.)  Best Buy thereupon sold its

$30 million note to Musicland Holding for $1 dollar (with a contingent right to

---

[18]      The balance would have been higher, but MSC, Best Buy's holding company, had assumed $35
million of the debt.  (¶ 51.)

participate in the future sale of a Sun affiliate), (id., Ex. 36, at §§ 2.1, 5.8), and sold its

equity in TMG, also for $1 dollar.  (Id., Ex. 1, at § 2.2(b)(i).)

These facts support the inference that Musicland was unable to pay the amounts

due under the various notes.  In essence, Best Buy accepted $35 million in satisfaction of

a $270,870,784 obligation.  In the process, Best Buy gave away a $30 million note and its

equity in TMG for nothing.  Best Buy's actions imply that the Musicland debt was worth

substantially less than the face amount because Musicland was unable to pay it, and the

equity in Musicland was still worth nothing even after Best Buy waived payment of

nearly $236 million of the debt.  Accordingly, the Amended Complaint adequately

alleges that Musicland was insolvent on and after March 31, 2003, and hence, the

Individual Defendants owed fiduciary duties to Musicland and its creditors.[19]

### 3.    The Business Judgment Rule

#### a.    The Pre-Sale Individual Defendants

Lastly, the Individual Defendants contend that the business judgment rule bars the

breach of fiduciary duty claim.  "To establish a breach of fiduciary duty by a corporate

director, a plaintiff must take into account the business judgment rule, which provides

that in making business decisions, there is a presumption that the directors of a

corporation act on an informed basis, in good faith and in the honest belief that the action

---

[19]    The Pre-Sale Individual Defendants' initial memorandum of law suggested that the claim of
insolvency was not plausible on its face.  (Best Buy Memo, at 4.)  They did not explain why.  At oral
argument, their counsel suggested that Musicland could not have been insolvent in 2003, and continued in
business until January 2006.  As noted, the specific factual allegations of insolvency are sufficient for
purposes of the motion.  Musicland's ability to continue in business is no doubt explained by its massive
borrowing and trade debt.  It reported aggregate liabilities of $485,575,000 as of December 31, 2005.
(Affidavit of Craig Wassenaar, Chief Financial Officer of Musicland Holding Corp., in Support of First
Day Motions, Pursuant to Local Bankruptcy Rule 1007-2, sworn to Jan. 13, 2006, at Ex. D)(ECF Doc. #
41, filed in case no. 06-10064.)

taken is in the best interests of the company."  Verestar, 343 B.R. at 472; accord Aronson

v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by Brehm v. Eisner,

746 A.2d 244, 254 (Del. 2000); Parnes v. Bally Entm't Corp., 722 A.2d 1243, 1246 (Del.

1999); Unocal Corp. v. Mesa Petrol. Co., 493 A.2d 946, 954 (Del. 1985); see Stanziale v.

Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 238 (3d Cir. 2005)(To survive the

motion to dismiss under Rule 12(b)(6), the plaintiff must "plead around the business

judgment rule.").  The protection of the business rule "can only be claimed by

disinterested directors whose conduct otherwise meets the tests of business judgment.

From the standpoint of interest, this means that directors can neither appear on both sides

of a transaction nor expect to derive any personal financial benefit from it in the sense of

self-dealing, as opposed to a benefit which devolves upon the corporation or all

stockholders generally."  Aronson, 473 A.2d at 812.  The Delaware Supreme Court has

indicated, in dicta, that the business judgment rule applies to officers qua officers to the

same extent as directors.  See Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1162

(Del. 1995).[20]

        The substance of the charge against the Pre-Sale Individual Defendants is that the

execution of the Debt Instruments and the payment of the Transfers were the product of

dual loyalties and self-dealing.  Best Buy controlled Musicland, its wholly owned

subsidiary.[21]  All of the Pre-Sale Individual Defendants, except Muehlbauer, either had

---

[20]        The parties have also assumed that the business judgment rule applies equally to officers and
directors.  The assumption has been the subject of academic debate.  See Rafool v. Goldfarb Corp. (In re
Fleming Packaging Corp.), 351 B.R. 626, 635 (Bankr. N.D. Ill. 2006).

[21]        Four of the Musicland directors were also directors of Best Buy.  The Amended Complaint does
not identify the number of Musicland directors, but the TMG by-laws state that the board shall consist of
seven directors.  (Stock Purchase Agreement, Ex. 11, at § 3.2.)  Hence, the Best Buy directors made up a
majority of the TMG board.

significant financial interests in Best Buy, or at a minimum, owed fiduciary duties to Best

Buy as well as Musicland.  Anderson, a Musicland director, was also a director, Vice

Chairman and Chief Executive Officer of Best Buy, (¶ 18), and received more than $1.63

million in salary and compensation from Best Buy in 2003.  (¶ 60.)  As of March 1, 2003,

he owned or had a beneficial interest in approximately 3.3 million shares of Best Buy.  (¶

62.)  Lenzmeier, a Musicland director, also served as a director, Vice Chairman,

President and Chief Operating Officer of Best Buy, (¶ 25), and received more than $1.2

million in salary and compensation from Best Buy in 2003.  (¶ 61.)  As of March 1, 2003,

he owned or had beneficial ownership in approximately 1.9 million shares of Best Buy.

(¶ 63.)  In addition, Fuhrman, Freeland and Jackson were officers and directors of

Musicland, and officers of Best Buy, (¶¶ 20, 21, 22), and Berg was an officer of both

companies.[22]  (¶ 19.)

        The Amended Complaint alleges that because of their connection to or

relationship with Best Buy, the Pre-Sale Individual Defendants "were <u>dependent</u> upon

Best Buy for continued employment and compensation and were therefore <u>beholden</u> to

Best Buy to the detriment of Musicland," (¶ 68)(emphasis added), "<u>lacked</u>

<u>independence</u>," (¶ 69)(emphasis added), "<u>relied on Best Buy</u> for compensation and/or

other benefits and maintained substantial personal interests in Best Buy," (¶ 70)(emphasis

added), and "had <u>material adverse personal interests</u> at the time decisions were made for

Musicland."  (¶ 71)(emphasis added.)  These allegations are plausible, and sufficient to

---

[22]     The Amended Complaint alleges that "Best Buy rewarded Berg for his loyalty by promoting
him to Senior Vice President, Strategic Alliances in 2004, and naming him Chief Operating
Officer of Best Buy International, a newly created position, in 2006."  (¶ 84.)  The reason the plaintiff
attributes to the promotion is speculation.  It is equally plausible that he was promoted based on
competence.  In any event, the Amended Complaint does not allege or imply that Best Buy promised this
reward to induce Berg to participate in the transactions with Musicland.

rebut the business judgment rule on a motion to dismiss.  See ASARCO LLC v.
Americas Mining Corp., 396 B.R. 278, 405 (S.D. Tex. 2008); Joseph v. Frank (In re Troll
Commc'ns, LLC), 385 B.R. 110, 119-20 (Bankr. D. Del. 2008).

The allegations relating to Muehlbauer present a closer question.  Muehlbauer
was an officer of Musicland, but did not become an officer of Best Buy until June 2003,
after he executed the Loan Agreement and the Original Note.[23]  Thus, he did not share
the same dual loyalties as the others.  The issue is whether Best Buy's control of
Musicland is sufficient to question Muehlbauer's independence.

Troll Communications answers the question.  There, the insolvent debtor paid
debts owed to its parent.  Three of the officers of the debtor (Lucking, Thompson and
Tuttle) were neither officers nor directors of the parent.  The complaint alleged that the
officers were nevertheless beholden to the parent's principals and therefore lacked
independence and executed corporate policy that they knew or should have known was
detrimental to the debtor and its creditors.  385 B.R. at 120.  The court concluded that
viewing the allegations in the light most favorable to the plaintiff, the complaint alleged
that the officers violated their duty of loyalty because they were beholden to the parent's
principals and allowed the parent's interests to take precedence.  Id.

The Amended Complaint in this case makes the same allegations against
Muehlbauer.  Although he did not owe fiduciary duties to Best Buy, he was beholden to
Best Buy for his continued employment.  For the reasons articulated in Troll

---

[23]    The plaintiff alleges that "[i]n June 2003, Best Buy rewarded Muehlbauer for his loyalty by
naming him Senior Vice President – Finance of Best Buy."  (¶ 91.)  As with Berg, this is speculation.

<u>Communications</u>, I conclude that the plaintiff has also stated a breach of fiduciary duty claim against Muehlbauer.

### b.    The Post-Sale Individual Defendants

I reach the opposite conclusion with respect to the Post-Sale Individual Defendants.  Krouse and Leder did not participate in the execution of the Debt Instruments or the First Transfer.  The most that can be said is that the Second Transfer occurred on their watch.  Individuals who become directors after the company has contracted to engage in a transaction do not breach their duty of loyalty by allowing the company to fulfill its contractual obligations.  <u>Bridgeport Holdings Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.</u>), 388 B.R. 548, 566 (Bankr. D. Del. 2008). Moreover, Musicland's new management discharged an ostensible $200 million obligation for $35 million, conferring a substantial benefit on the company.

Finally, the plaintiff's allegations of self-dealing against the Post-Sale Individual Defendants are not plausible.  The Amended Complaint states, in substance, that the $35 million paid to Best Buy benefited Sun.  (¶ 82.)  If the transfer had not been made, Sun would have acquired a Musicland that was $35 million richer.  Thus, the Amended Complaint does not plead facts that support the conclusion that Sun benefited from the Second Transfer.

Accordingly, the Eighth Claim for Relief is dismissed as to Krouse and Leder, and is otherwise denied.

**F.        Aiding and Abetting (Ninth Claim for Relief)**

Count Nine alleges that Best Buy aided and abetted the breach of fiduciary duty

by Musicland's officers and directors.  The elements of the claim under Delaware law

include (1) the existence of a fiduciary duty, (2) breach of the duty, (3) knowing

participation in the breach by a non-fiduciary defendant and (4) damages.  Verestar, 343

B.R. at 482.  The Court has already ruled that the Amended Complaint states a claim for

breach of fiduciary duty against the Pre-Sale Individual Defendants, satisfying the first

two elements.  In addition, the damage – $145 million – is evident.  Best Buy also

contends, however, that the Amended Complaint fails to plead "knowing participation"

with the requisite particularity.

The substance of the aiding and abetting claim is that Best Buy used its control of

TMG to cause it to execute the Debt Instruments, and make the Transfers, knowing that

its underlying claims were not legitimate and could not otherwise be recovered.  In

support, the Amended Complaint includes the following allegations:

> Knowing full well that its capital investment was not recoverable,
> Best Buy and the other defendants engineered a series of transactions
> designed to disguise Best Buy's capital investment as debt in an attempt to
> recover all (or, at least, a portion) of its investment.  To this end, Best Buy
> (practically on the eve of its sale of Musicland) caused TMG to execute
> several credit-type documents which characterized Best Buy's capital
> investment as debt, and, pursuant to which Musicland transferred more
> than $145 million to Best Buy -- purportedly in partial satisfaction of such
> debt.

(¶ 2.)

> Best Buy, through and with the knowing assistance of Anderson,
> Berg, Fuhrman, Freeland, Jackson, Lenzmeier and Muehlbauer, devised a
> plan designed to give the appearance that its equity investments were
> loans, i.e., debt, in the hope of salving [sic] some return on its huge
> investment in Musicland.

(¶ 42.)

On March 31, 2003, Best Buy, as lender, and TMG, as borrower, executed a Revolving Credit Loan Agreement (the "Loan Agreement"), ostensibly to create a lending arrangement between Best Buy and TMG and/or Musicland.

(¶ 44.)

These allegations are sufficient to support the charge that Best Buy knowingly participated in the Pre-Sale Individual Defendants' breach of fiduciary duty.

Accordingly, the motion to dismiss the Ninth Claim for Relief is denied.

## CONCLUSION

Based on the foregoing, the Tenth, Eleventh and Twelfth Claims for Relief are dismissed, as well as the part of the Eighth Claim that asserts that the Post-Sale Individual Defendants breached their fiduciary duties. The motions are otherwise denied. The plaintiff is directed to settle an order on notice, and contact chambers to schedule a pre-trial conference.

Dated: New York, New York
December 23, 2008

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge