UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                               :
                                                     :
MUSICLAND HOLDING CORP., et al.,    :            Chapter 11 (Confirmed)
                                                     :            Case No. 06-10064 (SMB)
                        Debtors.                :
------------------------------------------------------X
THE RESPONSIBLE PERSON OF           :
MUSICLAND HOLDING CORP., et al.,    :
                                                     :
                        Plaintiff,              :
                                                     :
        -- against --                            :            Adv. Proc. No. 08-01023
                                                     :
BEST BUY CO., INC., BRADBURY H.     :
ANDERSON, DAVID P. BERG,             :
CONNIE B. FUHRMAN, KEVIN P.         :
FREELAND, DARREN R. JACKSON,        :
RODGER R. KROUSE, MARC J. LEDER, :
ALLEN U. LENZMEIER and JAMES L.     :
MUEHLBAUER,                          :
                                                     :
                        Defendants.           :
------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION TO COMPEL DISCOVERY

**A P P E A R A N C E S:**

HAHN & HESSEN LLP
Attorneys for Plaintiff
488 Madison Avenue
New York, NY 10022

        Mark T. Power, Esq.
        John P. Amato, Esq.
        Robert J. Malatak, Esq.
            Of Counsel

FOLEY & LARDNER LLP
Co-counsel for Defendants Best Buy Co., Inc.,
   Bradbury H. Anderson, David P. Berg, Connie B.
   Fuhrman, Kevin P. Freeland, Darren R. Jackson,
   Allen U. Lenzmeier and James L. Muehlbauer
90 Park Avenue
New York, NY 10016

        Douglas E. Spelfogel, Esq.
        Douglas S. Heffer, Esq.
        Of Counsel

   - and -

ROBINS, KAPLAN, MILLER & CIRESI LLP
Co-counsel for Defendants Best Buy Co., Inc.,
   Bradbury H. Anderson, David P. Berg, Connie B.
   Fuhrman, Kevin P. Freeland, Darren R. Jackson,
   Allen U. Lenzmeier and James L. Muehlbauer
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

        Elliot S. Kaplan, Esq.
        Anne M. Lockner, Esq.
        Of Counsel


**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

        The plaintiff filed this adversary proceeding against the debtors' former parent, officers

and directors primarily to avoid and recover two transfers aggregating $145,385,892.  The

Amended Complaint also asserted claims for the payment of illegal dividends, breach of

fiduciary duty, aiding and abetting the breach of fiduciary duty and rescission.  During

discovery, the Best Buy Defendants, defined below, requested documents from the plaintiff

pertaining to the business conducted by the debtors' creditors and the revenues earned by those

creditors after Best Buy Co. ("Best Buy") sold the debtors to Sun Capital Partners ("Sun").  The

plaintiff objected to the request, and the Best Buy Defendants moved to compel discovery.  For

the reasons that follow, the motion is denied.

## BACKGROUND

The facts underlying the instant dispute, which are taken from the Amended Complaint, are detailed in Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp., 398 B.R. 761 (Bankr. S.D.N.Y. 2008). I assume familiarity with that opinion, and repeat only the facts necessary to this decision.

### A.      Pre-Bankruptcy Transfers

At all relevant times, the debtors (collectively "Musicland") were engaged in the retail sale of music, movies, games and other entertainment-related products, and operated hundreds of retail stores throughout the United States. In January 2001, Best Buy acquired Musicland for $696 million. The purchase price consisted of two parts. First, Best Buy acquired the common stock of Musicland Store Corp. ("MSC") for $425 million. Second, it assumed $271 million of long-term debt, or infused that amount which The Musicland Group, Inc. ("TMG") used to retire the long-term debt. Best Buy made additional equity investments during the next two years, and made net equity investments totaling $381,256,676.

Following the acquisition, Best Buy selected and installed officers and directors to operate Musicland. They included the defendants Anderson, Berg, Fuhrman, Freeland, Jackson, Lenzmeier and Muehlbauer (collectively with Best Buy, the "Best Buy Defendants"). With the possible exception of Muehlbauer, the individual Best Buy Defendants simultaneously served as officers or directors, or both, of Best Buy.

On March 31, 2003, Best Buy and TMG executed a Revolving Credit Loan Agreement

and note in the amount of $400 million to memorialize Best Buy's existing investment.  Between March 31, 2003 and June 16, 2003, Musicland transferred $110,385,892 in cash and property to Best Buy in partial payment of the note (the "First Transfer").

On June 16, 2003, Best Buy sold its interests in Musicland to Musicland Holding Corporation ("MHC"), a Sun affiliate.  As part of the transaction, Musicland agreed to pay $35 million to Best Buy "immediately following the Closing."  Musicland paid the $35 million on June 16, 2003 (the "Second Transfer," and collectively with the First Transfer, the "Transfers").

**B.      Bankruptcy and Adversary Proceeding**

Musicland operated for approximately 31 months after the sale when, on January 12, 2006, it filed chapter 11 petitions in this Court.  The Official Committee of Unsecured Creditors commenced this adversary proceeding on January 11, 2008, and the plaintiff stepped into the Committee's shoes under the confirmed plan.  The plaintiff subsequently filed the Amended Complaint, which included twelve counts.  For present purposes, the claims can be divided into two categories.  First, the plaintiff sought to avoid and recover the Transfers to Best Buy (the "Fraudulent Transfer Claims").  Second, the plaintiff charged that the individual defendants breached their fiduciary duties to Musicland by permitting the Transfers, and Best Buy aided and abetted that breach (the Fiduciary Duty Claims").[1]

---

[1]      The Fiduciary Duty Claims also targeted defendants Krouse and Leder, officers and directors installed by Sun to manage Musicland after the sale.  These claims were limited to the Second Transfer, and have been dismissed.  Musicland, 398 B.R. at 789-90.

- 4 -

C.    **The Present Dispute**

On March 27, 2009, the Best Buy Defendants demanded the production of "[a]ll documents relating to the amount of any such business conducted by [creditors at the times of the Transfers] with TMG, MHC, and/or Sun Capital after TMG' [sic] acquisition, including the volume of goods exchanged and sales, profit, or revenue figures." (Affirmation of Anne M. Lockner, Ex. C, at ¶ 54 (ECF Doc. # 108).)  The plaintiff objected to the request on several grounds, including that it was "not relevant to any Party's claims or defenses." (Id., Ex. D, at 30.)  After several unsuccessful efforts by the parties to resolve the dispute, the Best Buy Defendants filed this motion to compel discovery on November 24, 2009.  (Best Buy Defendants' Motion to Compel Document From Plaintiff, dated Nov. 24, 2009 ("Motion to Compel") (ECF Doc. #127).)

The Best Buy Defendants contend that the discovery is relevant to the Fiduciary Duty Claims to show that creditors benefited from Musicland's post-sale operation.  "[E]vidence that Musicland's creditors benefited from Best Buy's sale of Musicland by continuing to do business with Musicland and profit from that business is relevant to show that the Individual Best Buy Defendants were, in fact, acting in the best interests of the "community of interests" that come into play when insolvency is alleged," (Motion to Compel at 5 (citing In re: Scott Acquisition Corp., 344 B.R. 283, 289 (Bankr. D. Del. 2006)), and "their conduct succeeded in serving those interests by allowing the creditors to profit for an additional two years.  In other words, the fact that the creditors—as a whole—profited by doing business with Musicland for over two years after the transactions in question make[s] it 'less probable' that a breach of fiduciary duty occurred." (Id. at 6.)  Furthermore, "[i]f the creditors continued to do business with and profit

- 5 -

from Musicland for nearly 2½ years after the transfers at issue, it is unlikely that Plaintiff can connect any purported damages to an alleged breach of fiduciary duty or fraud years earlier." (Best Buy Defendants' Reply Memorandum in Support of Their Motions for Leave to Amend Their Answer Pursuant to Federal Rule of Civil Procedure 15 and to Compel Discovery Responses, dated Jan. 12, 2010, at 14 ("Best Buy Reply") (ECF Doc. # 125).)

The Best Buy Defendants also assert that the information is relevant to their equitable defenses to the Fraudulent Transfer Claims.  The plaintiff's standing to assert the Fraudulent Transfer Claims under 11 U.S.C. § 544(b) is derived from the creditors, and the information is "relevant to show that Musicland creditors voluntarily continued to do business . . . and that they, in fact, benefited (albeit to an unknown degree) from the ultimate sale of the company.  This fact, coupled with the business' continuing viability after the sale and Plaintiffs' failure to complain about or challenge that sale until years after the sale was complete is relevant to all of Best Buy Defendants' equitable affirmative defenses."  (Motion to Compel at 7-8.)

## DISCUSSION

### A.    Rule 26 Discovery Standard

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure, parties "may obtain discovery on any matter, not privileged, that is relevant to a claim or defense of any party."  Relevance depends on the controlling substantive law.  U.S.E. Telecomm., Inc. v. U.S.W. Info. Sys., Inc., No. 87 Civ. 2924(KTD)(THK), 1993 WL 385810, at *31 (S.D.N.Y. Sept. 30, 1993).  Rule 26 permits discovery not only of admissible evidence, but also information "reasonably calculated to lead to discovery of admissible evidence."  FED. R. CIV. P. 26(b)(1);

- 6 -

Westernbank P.R. v. Kachkar, No. 07-1606, 2009 WL 856392, at *4 n.4 (S.D.N.Y. Mar. 27, 2009).  The burden is on the party seeking discovery to "explain how or why the [discovery] would be relevant to her claims."  Wright-Jackson v. HIP Health Plan, No. 07 Civ.1819(DFE), 2009 WL 1024244, at *4 (S.D.N.Y. Apr. 15, 2009); accord Salvatore Studios Int'l v. Mako's Inc., No. 01Civ. 4430(BSJ)(DF), 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001).

Even when the party seeking discovery establishes its relevance, a court may limit the discovery if "the burden or expense of the proposed discovery outweighs its likely benefit," FED. R. CIV. P. 26(b)(2)(C)(iii), or the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive," FED. R. CIV. P. 26(b)(2)(C)(i).  The party resisting discovery bears the burden of demonstrating that discovery of otherwise relevant evidence should be limited.  See 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008.1 (2d ed. 1994 & Supp. 2009) ("[A]n unsupported burden objection is not a guaranteed protection against responding to discovery."); Kingsway Fin. Servs, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 02, 2008) ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome.").

## B.    Relevance of Discovery to Fiduciary Duty Claims

Under New York choice-of-law principles, the state of incorporation governs the scope of the fiduciary duties owed by a corporation's directors and officers.  Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796, 798 n.3 (2d Cir. 1980); 380544 Canada, Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199, 233 (S.D.N.Y. 2008).  Musicland was incorporated in Delaware, and accordingly,

- 7 -

Delaware law governs the issue of whether the individual Best Buy Defendants breached their fiduciary duties.

Under Delaware law, corporate directors and officers owe fiduciary duties to the corporation and its shareholders.  Guft v. Loft, Inc., 5 A.2d 503, 510 (Del. 1939); see N. Am. Catholic Educ. Programm'g Found., Inc. v. Gheewalla, 930 A.2d 92, 99 (Del. 2007) ("Gheewalla"); Anadarko Petrol. Corp. v. Panhandle E. Corp., 545 A.2d 1171, 1174 (Del. 1988). "Conversely, the relationship between directors and creditors ordinarily is not fiduciary, but is contractual in nature," Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Group, 274 B.R. 71, 89 (D. Del. 2002), and the directors do not owe duties to the corporation's creditors beyond the relevant contractual terms.  Gheewalla, 930 A.2d at 99; Geyer v. Ingersoll Publ'ns Co., 621 A.2d 784, 787 (Del. Ch. 1992); see Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 787 (Del. Ch. 2004) ("So long as the directors honor the legal obligations they owe to the company's creditors in good faith, as fiduciaries they may pursue the course of action that they believe is best for the firm and its stockholders.")

When a corporation is insolvent, the "creditors take the place of the shareholders as the residual beneficiaries of any increase in value."  Gheewalla, 930 A.2d at 101.  Although officers and directors of an insolvent corporation are said to owe fiduciary duties to the corporation's creditors, this means only that the creditors have become the primary risk bearers of poor corporate decision-making, see Prod. Res., 863 A.2d at 791, and the corporate directors and officers must exercise their fiduciary duties for the benefit of the entire community of interests, including creditors.  See Hechinger, 274 B.R. at 89 ("At the moment a corporation becomes insolvent, however, the insolvency triggers fiduciary duties for directors for the benefit of

- 8 -

creditors."); <u>Geyer</u>, 621 A.2d at 787 (same).  But the corporation remains the primary object of

the fiduciary duties, <u>Prod. Res.</u>, 863 A.2d at 792, and the directors and officers must still

"exercise judgment in an informed, good faith effort to maximize the corporation's long-term

wealth creating capacity."  <u>Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.</u>,

Civ. A. No. 12150, 1991 WL 277613, at *34 (Del. Ch. Dec. 30, 1991); <u>see</u> <u>Trenwick Am. Litig.</u>

<u>Trust v. Ernst & Young, L.L.P.</u>, 906 A.2d 168, 204 (Del. Ch. 2006) (board of an insolvent

company "may pursue, in good faith, strategies to maximize the value of the firm"), <u>aff'd</u>, 931

A.2d 438 (Del. 2007).  If they breach that duty, the claim belongs to the corporation.  <u>Trenwick</u>,

906 A.2d at 195 n.75 ("[I]f the directors of an insolvent firm commit a breach of fiduciary duty

reducing the value of the firm, any claim belongs to the entity and . . . creditors would benefit

from the recovery derivatively, based on their claim on the firm's assets." (citation omitted));

<u>Prod. Res.</u>, 863 A.2d at 792 ("Claims of this type are classically derivative, in the sense that they

involve an injury to the corporation as an entity and any harm to the stockholders and creditors is

purely derivative of the direct financial harm to the corporation itself.").  Individual creditors

may sue derivatively, but "have <u>no right to assert direct</u> claims for breach of fiduciary duty

against corporate directors."  <u>Gheewalla</u>, 930 A.2d at 103 (emphasis in original).

At bottom, the Best Buy Defendants contend that they can defeat or mitigate the

plaintiff's Fiduciary Duty Claims by showing that certain creditors profited during the continued

operation of Musicland, even if Musicland suffered from the breach.  The theory turns fiduciary

duty law on its head.  Although Musicland's alleged insolvency required the Best Buy

Defendants to consider the interests of the creditors, they still owed their fiduciary duties to

Musicland.  In other words, they had the duty to maximize the value of Musicland for the

benefit, <u>inter alia</u>, of the entire creditor constituency.  They did not have the right or duty to keep

Musicland on life support so that creditors would continue to have a customer.  Accordingly, the

benefits that accrued to individual creditors while Musicland suffered are utterly irrelevant.[2]

The case law relied upon by the Best Buy Defendants to support their motion to compel

is distinguishable.  They cite <u>RSL Comm'ns, PLC v. Bildirci</u>, No. 04 Civ. 5217(RJS), 2009 WL

454136, at *1 (S.D.N.Y Feb. 23, 2009) and <u>Grace Bros. Ltd v. Uniholding Corp.</u>, Civ. A. No.

17612, 2000 WL 982401, at *16 (Del. Ch. July 12, 2000) for the proposition that a plaintiff in a

suit charging breach of fiduciary duty must show causation and damages.  (<u>Best Buy Reply</u> at

13-14.)  I agree.  But neither case supports the proposition that there is no breach, or there is less

of a breach, if the creditors profit while the corporation suffers.  Similarly, they cite <u>Trenwick</u>,

906 A.2d at 174, for the unremarkable proposition that corporate fiduciaries are not guarantors of

the success of their decisions, and a transaction that results in a loss to the corporation does not

necessarily mean that a breach occurred.  (<u>Best Buy Reply</u> at 14.)  This merely restates the

business judgment rule.  It does not follow, as the Best Buy Defendants argue, that "it is certainly

less likely that there was a breach if the result of the Best Buy Directors' decisions provided

Musicland creditors with over two years of additional business and profit."  (<u>Id.</u> at 15.)

Musicland's officers and directors did not owe a duty to the creditors to keep Musicland in

business to ensure that the creditors had a customer for their goods and services.

---

[2]    Not all creditors would agree that creditors benefited "as a whole" from Musicland's continued operation.
According to the approved disclosure statement, the allowed secured trade debt in this case totaled $170.1 million,
and the allowed unsecured debt ranged between $480 million and $520 million.  (<u>Order (A) Approving Disclosure
Statement; (B) Fixing A Voting Record Date; (C) Approving Solicitation and Voting Procedures with Respect to
Debtors' Chapter 11 Liquidating Plan; (D) Approving Form of Solicitation Package and Notices; (E) Scheduling
Certain Dates In Connection Therewith; and (F) Extending Exclusivity Period to Solicit Votes on the Plan</u>, Ex A. at
19 (ECF Doc. # 1221).)  Creditors were obviously providing goods and services to Musicland on credit and not
getting paid.

- 10 -

**C.      Relevance of Discovery to Equitable Defenses to Fraudulent Transfer Claims**

The plaintiff asserted his Fraudulent Transfer Claims under 11 U.S.C. § 544(b), and

relied on Minnesota law.  Minnesota Statutes § 513.50, which is derived from section 10 of the

Uniform Fraudulent Transfer Act, provides that "the principles of law and equity, including . . .

estoppel, laches, or other validating or invalidating cause, supplement its provisions."  The Best

Buy Defendants argue that the creditors failed to object to the sale to Sun and continued to do

business with Musicland and earn profits after the sale.  This conduct, they maintain, may

support equitable defenses to the plaintiff's Fraudulent Transfer Claims.

A trustee's standing under § 544(b)—the plaintiff has the same rights as a trustee—

depends on the existence of a triggering creditor, i.e., a creditor holding an allowable unsecured

claim who could have avoided the transfer under non-bankruptcy law.[3]  The trustee also

"inherits" the defenses to the triggering creditor's fraudulent transfer claim:

> In essence, the trustee must stand in the shoes of that actual creditor. It naturally
> follows, therefore, that if the transferee of the property would have a valid defense
> in a state fraudulent conveyance case brought by the actual creditor, the trustee
> would be subject to the same defense.  For example, if the triggering creditor is
> estopped from bringing a fraudulent conveyance claim, the trustee would be
> subject to the same estoppel defense.  Similarly, if the applicable statute of
> limitations had expired before the bankruptcy petition was filed, the trustee's
> action under § 544(b) would be subject to the same statute of limitations defense.

---

[3]      Section 544(b)(1) states:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of
> the debtor in property or any obligation incurred by the debtor that is voidable under
> applicable law by a creditor holding an unsecured claim that is allowable under section
> 502 of this title or that is not allowable only under section 502(e) of this title.

Alan N. Resnick, <u>Finding the Shoes that Fit: How Derivative is the Trustee's Power to Avoid Fraudulent Conveyances Under Section 544(b) of the Bankruptcy Code?</u>, 31 Cardozo L. Rev. 205, 213 (2009) ("<u>Finding the Shoes</u>") (footnotes omitted); <u>accord</u> <u>Harris v. Huff</u>, 160 B.R. 256, 261 (Bankr. M.D. Ga. 1993) (trustee estopped from asserting fraudulent transfer claim where sole triggering creditor had agreed not to contest the transfer); 5 ALAN N. RESNICK & HENRY J. SOMMER, 5 COLLIER ON BANKRUPTCY ¶ 544.07[3], at 544-21 (15th ed. rev. 2009) ("COLLIER") ("[I]f the creditor is deemed estopped to recover upon a claim, or is barred from recovery because the running of the statute of limitations prior to the commencement of the case, the trustee is likewise estopped or barred.").  Where, however, more than one triggering creditor exists, "the estoppel or barring of one will not affect the trustee's right to proceed."  5 COLLIER ¶ 544.07[3], at 544-22.  Furthermore, under the principle derived from rule of <u>Moore v. Bay</u>, 284 U.S. 4 (1931), the trustee can "recover the entire fraudulent conveyance for the benefit of all creditors even though the only actual creditor who could have avoided it under state law is owed only a fraction of that amount."  <u>Finding the Shoes</u> at 214.

The parties have stipulated that the City of Chicago qualifies as a triggering creditor for the purposes of § 544(b).  (<u>See</u> <u>Stipulated Order Regarding Plaintiff's Standing</u>, dated Jan. 11, 2010 (ECF Doc. # 123).)  The allowable claim is based on a $550 fine for a building code violation, and this claim provides the plaintiff with standing to recover the Transfers.  The conduct of any other prepetition creditor of Musicland is irrelevant, and the Best Buy Defendants have failed to show how the requested information is relevant to any defenses that could have been asserted had the City of Chicago brought the fraudulent conveyance action under non-bankruptcy law.

**CONCLUSION**

The Best Buy Defendants have failed to sustain their burden of demonstrating that the requested discovery is relevant within the meaning of FED. R. CIV. P. 26(b), and accordingly, their motion to compel is denied.  In light of this determination, the Court does not reach the plaintiff's alternative argument that compliance is burdensome, and the discovery should, therefore, be limited.

So ordered.

Dated: New York, New York
       February 16, 2010

                              /s/  *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge