| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>In re:                                                      :<br>                                                        :<br>MUSICLAND HOLDING CORP., et al.,    :<br>                                                        :<br>                 Debtors.                  :<br>------------------------------------------------------X<br>THE RESPONSIBLE PERSON OF        :<br>MUSICLAND HOLDING CORP., et al.,    :<br>                                                        :<br>                 Plaintiff,               :<br>                                                        :<br>             – against –              :<br>                                                        :<br>BEST BUY CO., INC., BRADBURY H.   :<br>ANDERSON, DAVID P. BERG,          :<br>CONNIE B. FUHRMAN, KEVIN P.      :<br>FREELAND, DARREN R. JACKSON,   :<br>RODGER R. KROUSE, MARC J. LEDER, :<br>ALLEN U. LENZMEIER and JAMES L.  :<br>MUEHLBAUER,                      :<br>                                                        :<br>                 Defendants.          :<br>------------------------------------------------------X | **FOR PUBLICATION**<br><br><br><br><br>Chapter 11 (Confirmed)<br>Case No. 06-10064 (SMB)<br><br><br><br><br><br><br><br><br><br><br><br>Adv. Proc. No. 08-01023 |

**MEMORANDUM DECISION AND ORDER DENYING
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A P P E A R A N C E S:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022

      Mark T. Power, Esq.
      John P. Amato, Esq.
      Robert J. Malatak, Esq.
         Of Counsel

*Attorneys for Plaintiff*

ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

>    Elliot S. Kaplan, Esq.
>    Anne M. Lockner, Esq.
>        Of Counsel

>    – and –

FOLEY & LARDNER LLP
90 Park Avenue, 36th Floor
New York, NY 10016

>    Douglas E. Spelfogel, Esq.
>    Douglas S. Heffer, Esq.
>        Of Counsel

*Attorneys for Defendants Best Buy Co., Inc.,*
  *Bradbury H. Anderson, David P. Berg, Connie B.*
  *Fuhrman, Darren R. Jackson, Allen U. Lenzmeier*
  *and James L. Muehlbauer*

AKERMAN SENTERFITT LLP
350 East Las Olas Boulevard
Ft. Lauderdale, FL 33301

>    Andrew P. Gold, Esq.
>    D. Brett Marks, Esq.
>    Dianne O. Fischer, Esq.
>    Susan F. Balaschak, Esq.
>    Kathlyn Schwartz, Esq.
>        Of Counsel

*Attorneys for Defendants Rodger R. Krouse and*
  *Marc J. Leder*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

The debtor The Musicland Group ("TMG") paid the defendant Best Buy Co., Inc. ("Best

Buy") $35 million (the "Transfer") prior to the petition date allegedly on account of an

antecedent debt, and is now seeking to avoid and recover the Transfer under Minnesota's version

of the Uniform Fraudulent Transfer Act ("UFTA"). Best Buy contends that any recovery must

2

be reduced by subsequent new value provided by its affiliate, and has moved for partial summary judgment on this issue. Best Buy's motion is denied for the reasons that follow.

## BACKGROUND

The material facts as they relate to the new value issue are not disputed. At all relevant times prior to June 16, 2003, TMG was a wholly-owned subsidiary of the Musicland Stores Corp., and the latter was a wholly-owned subsidiary of Best Buy. On June 16, 2003, Musicland Holding Corp. ("Musicland Holding") purchased all of TMG's shares from Musicland Stores Corp.

Two other transactions occurred on June 16, 2003 that bear on the pending motion. First, TMG paid Best Buy the $35 million Transfer. (¶ 24.)[1] Second, Musicland Holding and Best Buy Enterprise Services ("BBE"), a wholly-owned subsidiary of Best Buy, entered into a Transitional Services Agreement ("TSA").[2] In general, BBE agreed for one year to provide Musicland Holding and its subsidiaries with the same administrative and support services that it had provided to Musicland when it was owned by Best Buy. (TSA at 1 (fifth "WHEREAS" clause).) The services included, among other things, cash management, inventory and accounting control, expense accounts payable, consumer credit, sales audit and bank reconciliation, employee benefits, tax services, payroll services, merchandise accounts payable,

---

[1] Citations to "¶" followed by a number refer to correspondingly numbered paragraphs in the *Best Buy Defendants' Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment*, dated June 24, 2011 ("*Best Buy Statement of Facts*") (ECF Doc. # 182), *Plaintiff's Counter-Statement of Disputed Facts in Opposition to the Best Buy Defendants' Motion for Partial Summary Judgment*, dated September 2, 2011 ("*Plaintiff Statement of Facts*") (ECF Doc. # 196) and *Best Buy Defendants' Response to Plaintiff's Counter-Statement of Disputed Facts*, dated September 30, 2011 ("*Best Buy Reply Statement of Facts*") (ECF Doc. # 199). "ECF" refers to the electronic docket in this adversary proceeding.

[2] The TSA is attached as Exhibit R to the *Declaration of Anne M. Lockner in Support of the Best Buy Defendants' Motion for Partial Summary Judgment*, dated June 24, 2011 ("*Lockner Declaration*") (ECF Doc. # 184).

3

storage and handling, transportation, home order processing and product returns. (¶ 26.) Best Buy executed a Parent Undertaking pursuant to which it agreed to be "jointly and severally liable with [BBE] for the performance of all of the obligations of [BBE] in favor of [Musicland Holding] and its Subsidiaries pursuant to the Transition Services Agreement." (*Lockner Declaration*, Ex. Q.)

The TSA required BBE to send monthly invoices for services rendered in the preceding month. (TSA § 3.2.) In addition, Musicland Holding was required to pay a $5 million deposit to be credited against the fees payable for the last month in which Musicland Holding or its subsidiaries received services. (TSA § 3.2.) Best Buy or BBE generated invoices totaling $84,163,000, (*see* ¶ 29; *Lockner Declaration*, Ex. T ("TSA Invoices")), and TMG ultimately paid $75,543,000, (¶ 29), an amount the parties agree was the value of the services rendered. (¶ 30.)

Musicland Holding, TMG, and their other affiliates filed for chapter 11 relief on January 12, 2006, and confirmed a liquidating plan on January 18, 2008. Prior to confirmation, the Official Committee of Unsecured Creditors filed this adversary proceeding, and the plaintiff, the liquidating trustee under the plan, was substituted for the Committee upon confirmation. The *Amended Adversary Proceeding Complaint*, dated Mar. 11, 2008 ("*Amended Complaint*") (ECF Doc. # 11), seeks, *inter alia*, to recover the Transfer on the ground that it constituted an insider preference under § 513.45(b) of the Minnesota Statutes, MINN. STAT. § 513.45(b) (2010) (the "Minnesota Act"). (*See Amended Complaint* at ¶¶ 121-128.)

Best Buy moved for partial summary judgment, and all but one of the issues was disposed of from the bench. The only remaining question is whether Best Buy is entitled to

4

assert a new value defense in the amount of no less than $19.01 million under § 513.48(f)(1) of the Minnesota Act based on the transitional services provided by BBE under the TSA.[3] (*Best Buy Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment*, dated June 24, 2011 ("*Best Buy Memo of Law*"), at 20 (ECF Doc. # at 179).)

## DISCUSSION

### A.      Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by FED. R. BANKR. P. 7056, governs summary judgment motions. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).[4] The moving party bears the initial burden of showing that the undisputed facts entitle him to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding whether material factual issues exist, all ambiguities must be resolved and all inferences must be drawn in favor of the nonmoving party.

---

[3]     The $19.01 million figure results from a dispute regarding the $5 million deposit and its effect on the new value defense discussed in the succeeding text. The plaintiff contends that the deposit secured the payment of each monthly invoice, and hence, only the portion of the monthly bill exceeding $5 million was unsecured and eligible for treatment as new value. In fact, the plaintiff argues that the unsecured portion was less than $19.01 million, while Best Buy contends that the unsecured portion was much greater. The dispute is immaterial. Finally, Best Buy has not argued that its Parent Undertaking constituted new value.

[4]     Best Buy's motion is governed by the amendments to Rule 56 that became effective on December 1, 2010. Although some language has changed, the standard for granting summary judgment remains unchanged and the amendments will not "affect continuing development of the decisional law construing and applying these phrases." FED. R. CIV. P. 56 advisory committee's note (2010).

5

*Matsushita*, 475 U.S. at 587. The court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." FED. R. CIV. P. 56(f)(1).

**B.     The Bankruptcy Code**

The Minnesota Act was adopted verbatim from the UFTA which, in turn, was derived from the Bankruptcy Code. Consequently, we begin the discussion there. Section 547(b) of the Bankruptcy Code allows a trustee to avoid preferences, and § 547(c) provides certain defenses to the transferee. Under § 547(c)(4), the trustee may not avoid a transfer under § 547(b)

> to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor–
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The "new value" exception encourages creditors to deal with troubled businesses, *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines)*, 130 F.3d 323, 326 (8th Cir. 1997); *Southern Technical Coll., Inc. v. Hood*, 89 F.3d 1381, 1384 (8th Cir. 1996) (quoting *Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 651 (8th Cir. 1991)); *Charisma Inv. Co., N.V. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir. 1988); *see Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1091 (5th Cir. 1994); *see generally* 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 547.04[4][b], at 547-65 (16th ed. 2011), and promotes equality of treatment among creditors. *Jet Florida Sys., Inc.*, 841 F.2d at 1083-84. It recognizes that the new value effectively repays the earlier preference, and offsets the harm to the debtor's other creditors. *See Toyota of Jefferson, Inc.*, 14 F.3d at 1091; *Kroh Bros.*, 930 F.2d at 652; *Jet Florida Sys., Inc.*, 841 F.2d at 1084. Accordingly, "the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate." *Kroh Bros.*,

6

930 F.2d at 652; *accord Southern Technical Coll., Inc.*, 89 F.3d at 1384; *Toyota of Jefferson, Inc.*, 14 F.3d at 1091-92; *Savage & Assocs., P.C. v. Level(3) Commc'ns (In re Teligent, Inc.)*, 315 B.R. 308, 315 (Bankr. S.D.N.Y. 2004).

The party relying on the defense must show that it gave unsecured new value after the preferential transfer. *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 231 (9th Cir. 1995). This much is clear. It is also said to be the "majority rule" that the new value must remain unpaid. *E.g.*, *id.* (discussing the majority rule and emerging trend). The rationale for the majority rule is that if the debtor pays for the new value, the estate has not been replenished and the creditor receives the double benefit of a new value defense and the payment for the new value. *Id.*; *Kroh Bros.*, 930 F.2d at 652 ("If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor.").

The error in reading the so-called majority rule too broadly was explained by Judge Tina L. Brozman of this Court in *Official Committee of Unsecured Creditors of Maxwell Newspapers v. Travelers Indemnity Co., (In re Maxwell Newspapers)*, 192 B.R. 633 (Bankr. S.D.N.Y. 1996). First, most of these courts that identified the majority rule did so in *dicta*. *Id.* at 639. Second, the majority rule ignores § 547(c)(4)(B) which states that the defense is available if the debtor "did not make an otherwise unavoidable transfer to or for the benefit of such creditor." *Id.* Obviously, this phrase implies some payments will not deprive the transferee of the new value defense. The double negative in § 547(c)(4)(B) is unnecessarily confusing, but the statute means that the new value defense is available, despite payment, if the payment was an avoidable transfer, *i.e.*, a preference or fraudulent transfer. Under those circumstances, the creditor must return the second payment, and "[t]here is no logical reason to distinguish between a creditor that was paid by an avoidable transfer and one that was never paid at all." *Maxwell Newspapers*, 192

7

B.R. at 639; *accord Jones Truck Lines*, 130 F.3d at 329; *Bogdanov v. Avnet, Inc.*, 10-CV-543-SM, 2011 WL 4625698, *5 (D.N.H. Sept. 30, 2011) (same).

This interpretation is consistent with the underlying policies of the new value exception to encourage creditors to continue to deal with a financially shaky debtor, but replenish an estate diminished by a preference. The creditor is entitled to only one credit for goods and services it later supplied. Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 VAND. L. REV. 713, 788 (1985). The new value and the second payment are a "wash," and if the creditor is allowed to assert the new value defense and also keep the second payment for the new value, the estate will still be diminished to the extent of the original transfer. If, on the other hand, the estate can defeat the new value defense and also recover the payment for the new value as a second preference, the creditor will pay twice—once with new value and once by returning the second payment—for what amounts to a single injury. The same rationale applies to the requirement that the debt arising in connection with the new value must be unsecured. If the debtor gives a lien to secure the obligation to pay for the new value, the lien will have the same diminishing effect on the estate as if the debtor simply paid for the new value outright.

Here, TMG paid for the new value with an "otherwise unavoidable transfer,"[5] and Best Buy would be barred from asserting the new value defense under the Bankruptcy Code.[6] However, the plaintiff is suing under the Minnesota Act which commands a different result.

---

[5] Although the plaintiff argues that TMG did not receive any benefit from the transition services, he has never contended that the payments for those services were avoidable as a fraudulent or preferential transfer.

**C.      The Minnesota Act**

  **1.      Payment for New Value**

Section 513.45(b) of the Minnesota Act, which is identical to UFTA § 5(b), condemns insider preferences by an insolvent debtor:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Best Buy concedes for the purpose of its motion that the Transfer meets the definition of an insider preference under this provision. Instead, it relies on the new value defense under the Minnesota Act. Pursuant to § 513.48(f)(1), "[a] transfer is not voidable under section 513.45(b) . . . to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien." Section 513.48, which is identical to section 8 of the UFTA, is derived from § 547(c)(4) of the Bankruptcy Code. UNIF. FRAUDULENT TRANSFER ACT prefatory note, 7A U.L.A. 6-7 (2006); *see also id.* § 8 cmt. 6, 7A U.L.A. at 181. While UFTA § 8(f)(1), like Bankruptcy Code § 547(c)(4), requires that the credit arising from the delivery of new value be unsecured, it omits the limitation in § 547(c)(4)(B) that the new value cannot be paid for with an "otherwise unavoidable transfer." In other words, the payment for the new value does not affect the availability of the defense.

---

[6]      The plaintiff correctly observes that this Court and other courts in this district have stated that the new value must remain unpaid. (*Plaintiff's Memorandum of Law in Opposition to the Best Buy Defendants' Motion for Partial Summary Judgment*, dated Sept. 2, 2011, at 39 (*citing Official Comm. of Unsecured Creditors. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 49 n.21 (Bankr. S.D.N.Y. 2006); *In re Pameco Corp.*, 356 B.R. 327, 341 (Bankr. S.D.N.Y. 2006); *Teligent*, 315 B.R. at 315) (ECF Doc. # 194).) Saying that the new value must remain "unpaid" is merely a shorthand method of describing § 547(c)(4)(B). *Jones Truck Lines*, 130 F.3d at 329; *Toyota of Jefferson*, 14 F.3d at 1093 n.2; *Maxwell Newspapers*, 192 B.R. at 640.

9

*Elliot & Callan, Inc. v. Crofton*, 615 F. Supp. 2d 963 (D. Minn. 2009), the only reported case to address the question, is directly on point. There, the debtor's president (Crofton) loaned roughly $630,000 to the debtor in stages over a period of several years. 615 F. Supp. at 967. During the same period, and while insolvent, the debtor repaid $334,358.62 also in stages to the insider. *Id.* at 967, 976-80. Consequently, Crofton made subsequent advances after receiving repayments, and the debtor thereafter repaid some of those subsequent advances. A judgment creditor (E & C) of the debtor sued Crofton under the insider preference provision of the Minnesota Act to avoid and recover the transfers that the debtor had made. *Id.* at 967. Crofton argued, *inter alia*, that he was entitled to assert the new value defense to the extent of a subsequent advance even though the debtor had eventually repaid that advance.

The District Court agreed. After reviewing the analogous issue under § 547(c)(4) of the Bankruptcy Code, *id.* at 973, the court ultimately relied on the unambiguous language of § 513.48(f)(1) of the Minnesota Act:

> Although the "new value" defense under UFTA is not identical to the "new value" defense under the Bankruptcy Code, the language of UFTA similarly does not require that the "new value" remain unpaid. Instead, the only requirement under UFTA is that the "new value" not be "secured by a valid lien." Minn. Stat. § 513.48(f)(1). E & C has never argued that any of the loans or advances that Crofton made were secured by valid liens. The Court therefore concludes that Crofton is entitled to set-offs for any "new value" in the form of loans or advances, whether or not SCC later repaid or reimbursed Crofton for that "new value."

*Id.*

Applying the Minnesota law to the present case, I conclude that TMG's payment for the new value provided by BBE does not limit Best Buy's new value defense. The result is difficult to justify in light of the purpose of preference law in general and the new value exception in particular. The Transfer diminished TMG by $35 million. Permitting Best Buy to assert the new

10

value defense to the Transfer and keep the payments gives it a double credit for the new value, and leaves the estate unreplenished.

Furthermore, the Minnesota Act, like the Bankruptcy Code, requires that the new value be unsecured. The official Comment to UFTA § 8(f)(1) explains the reason for this limitation:

> If the insider receiving the preference thereafter extends new credit to the debtor but also takes security from the debtor, the injury to the other creditors resulting from the preference remains undiminished by the new credit. On the other hand, if a lien taken to secure the new credit is itself voidable by a judicial lien creditor of the debtor, the new value received by the debtor may appropriately be treated as unsecured and applied to reduce the liability of the insider for the preferential transfer.

UNIF. FRAUDULENT TRANSFER ACT § 8 cmt. 6, 7A U.L.A. at 181. Thus, new value secured by an unavoidable lien does not replenish the diminution caused by the original preference. The same logic applies when the debtor pays for the new value with cash instead of a secured IOU.

The Court's research has not revealed a reason why the payment limitation incorporated in § 547(c)(4)(B) was omitted from UFTA § 8(f)(1), particularly given the inclusion of the limitation relating to secured credit. Nevertheless, the Minnesota Act unambiguously excludes a limitation on the new value defense resulting from payment for the new value, and the Court cannot rewrite the statute to add it. *See Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001) ("The rules of construction forbid adding words or meaning to a statute that were intentionally or inadvertently left out."); *State v. Moseng*, 95 N.W.2d 6, 11-12 (Minn. 1959) ("Where failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature."). Any necessary fix resides with the Minnesota legislature. Accordingly, I reach the same conclusion as the District Court in

*Elliot & Callan*, and hold that the payment for the new value does not limit Best Buy's new value defense under § 513.48(f)(1) of the Minnesota Act.

### 2. Third Party New Value

The foregoing assumed that the new value provided by BBE was available to Best Buy as a defense.[7] This assumption, however, does not withstand analysis. In this case, Best Buy was the creditor that received the Transfer in satisfaction of the $35 million debt that was owed by TMG. Best Buy did not provide any new value, BBE did. Yet sections 513.45(b) and 513.48(f)(1), read together, state in relevant part that "[a] transfer made by an [insolvent] debtor is fraudulent . . . if the transfer was made to an insider . . . [but] [a] transfer is not voidable . . . to the extent *the insider* gave [unsecured] new value to or for the benefit of the debtor." (Emphasis added.) The unambiguous language means that the insider who received the preference must be the same person who provided the new value, and cases construing the comparable provision of the Bankruptcy Code support this interpretation.

Bankruptcy Code § 547(c)(4) states that the trustee may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, *such creditor* gave new value to or for the benefit of the debtor." (Emphasis added.) Section 547(c)(4) requires that the person who received or benefited from the transfer must be the one that provided the new value. *First Sec.-Bank, N.A. v. Davis (In re Telsave Corp.)*, 116 Fed. Appx. 91, 92 (9th Cir. 2004); *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348, 353 n.2 (Bankr. S.D.N.Y. 2007); *see Jones Truck Lines*, 130 F.3d at 327 (contrasting § 547(c)(1), which allows a third party to deliver *contemporaneous*

---

[7] Best Buy concedes that BBE is the entity that rendered the transitional services under the TSA. (*Best Buy Statement of Facts* at ¶ 25 ("After the sale of TMG to Musicland Holding Corporation, Best Buy Enterprise Services provided transitional services to TMG at cost under a negotiated Transition Services Agreement.").)

new value, with § 547(c)(4), which expressly requires the transferee-creditor to provide the *subsequent* new value); *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000) (same).

Best Buy's only contrary authority is distinguishable. In *CareerCom, Corp. v. U.S. Dep't of Educ. (In re CareerCom, Corp.)*, 215 B.R. 674 (Bankr. M.D. Pa. 1997), the affiliated debtors ran educational institutions and trade schools, funded with grants from the Department of Education ("DOE"). *Id.* at 675. The affiliated debtors maintained a single, co-mingled bank account, but separately accounted for each affiliate. *Id.* at 676. If an affiliate's subaccount fell below zero, its debts were paid from the solvent subaccounts of other affiliates. *Id.* Three arguably insolvent affiliates owed approximately $79,000 to the DOE in connection with certain fines and repayment obligations. *Id.* This amount was paid from the co-mingled account to the DOE who thereafter advanced the aggregate amount of $3.3 million in grant money to the affiliated debtors. *Id.*

The bankruptcy court concluded that each affiliate received new value directly or indirectly as a result of the continued DOE funding. *Id.* at 677 (citing *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981) and *Klein v. Tabatchnik*, 610 F.2d 1043, 1047 (2d Cir. 1979)). Unlike here, that case did not involve third-party new value; the DOE was the creditor that received the preference and also paid the new value. In addition, the defendant raised the contemporaneous new value defense under § 547(c)(1) and not the subsequent new value defense under § 547(c)(4). *See id.* at 676. As noted earlier, the language of the former is different from the latter, and under § 547(c)(1), a third party can deliver the *contemporaneous* new value.

13

Although the language in Bankruptcy Code § 547(c)(4) and § 513.48(f)(1) of the Minnesota Act differ, the differences are immaterial. The Minnesota Act, like its bankruptcy analog, requires the transferee to provide the new value, *i.e.*, third-party new value does not count. Best Buy cannot base a subsequent new value defense on the services provided by its affiliate, BBE, under the TSA, and its motion for partial summary judgment on this issue is, therefore, denied.

This conclusion appears to dispose of Best Buy's new value defense to the Transfer, but the plaintiff did not move for summary judgment. Best Buy is, therefore, directed to show cause why the Court should not grant partial summary judgment to the plaintiff dismissing the new value defense. It may submit a memorandum within fourteen days of this order, not exceeding fifteen pages, explaining why the Court should not grant this relief. The plaintiff may submit an opposition memorandum not exceeding fifteen pages within fourteen days of the service and filing of Best Buy memorandum, and the issue will be deemed submitted. No further submissions will be permitted absent an order of this Court.

So Ordered.

Dated: New York, New York
       December 30, 2011

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge