```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                              :
                                                    :
MUSICLAND HOLDING CORP., et al.,                    :        Chapter 11 (Confirmed)
                                                    :        Case No. 06-10064 (SMB)
                   Debtors.                         :
-------------------------------------------------------X
THE RESPONSIBLE PERSON OF                           :
MUSICLAND HOLDING CORP., et al.,                    :
                                                    :
                   Plaintiff,                       :
                                                    :
           – against –                              :        Adv. Proc. No. 08-01023
                                                    :
BEST BUY CO., INC., BRADBURY H.                     :
ANDERSON, DAVID P. BERG,                            :
CONNIE B. FUHRMAN, KEVIN P.                         :
FREELAND, DARREN R. JACKSON,                        :
RODGER R. KROUSE, MARC J. LEDER,                    :
ALLEN U. LENZMEIER and JAMES L.                     :
MUEHLBAUER,                                         :
                                                    :
                   Defendants.                      :
-------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## GRANTING PARTIAL SUMMARY JUDGMENT

**A P P E A R A N C E S:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022

    Mark T. Power, Esq.
    John P. Amato, Esq.
    Robert J. Malatak, Esq.
        Of Counsel

*Attorneys for Plaintiff*

ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

    Elliot S. Kaplan, Esq.
    Anne M. Lockner, Esq.
        Of Counsel

  – and –

FOLEY & LARDNER LLP
90 Park Avenue, 36th Floor
New York, NY 10016

    Douglas E. Spelfogel, Esq.
    Douglas S. Heffer, Esq.
        Of Counsel

*Attorneys for Defendants Best Buy Co., Inc.,
  Bradbury H. Anderson, David P. Berg, Connie B.
  Fuhrman, Darren R. Jackson, Allen U. Lenzmeier
  and James L. Muehlbauer*

AKERMAN SENTERFITT LLP
350 East Las Olas Boulevard, Suite 1600
Ft. Lauderdale, FL 33301

    Andrew P. Gold, Esq.
    D. Brett Marks, Esq.
    Dianne O. Fischer, Esq.
    Susan F. Balaschak, Esq.
    Kathlyn Schwartz, Esq.
        Of Counsel

*Attorneys for Defendants Rodger R. Krouse and
  Marc J. Leder*

**STUART M. BERNSTEIN
United States Bankruptcy Judge**

      In *Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 462 B.R. 66 (Bankr. S.D.N.Y. 2011) ("*Prior Decision*"), the Court denied the motion by the defendant Best Buy Co., Inc. ("Best Buy") for partial summary

judgment that Minnesota's subsequent new value defense protected it from liability for a $35 million insider preference (the "Transfer") that it had received from the debtor The Musicland Group ("TMG"). The new value addressed in the *Prior Decision* related to services provided by Best Buy's affiliate, Best Buy Enterprises ("BBE"), under a Transitional Services Agreement ("TSA") between BBE and Musicland Holding Corp. ("Musicland Holding"). Because the plaintiff had not moved for summary judgment, the Court directed Best Buy to show cause why partial summary judgment should not be granted to the plaintiff striking the defense. *Id.* at 74. The Court received supplemental submissions from both sides, and now grants partial summary judgment to the extent discussed below.

## BACKGROUND

The relevant facts are discussed in the *Prior Decision*, familiarity with which is assumed. Briefly, after TMG paid the Transfer, BBE rendered services to TMG under the TSA. After TMG filed for chapter 11 relief, the plaintiff's predecessor, the Official Committee of Unsecured Creditors, filed an adversary proceeding against Best Buy alleging, *inter alia*, that the Transfer constituted an insider preference under § 513.45(b) of the Minnesota Statutes, MINN. STAT. § 513.45(b) (2010) (the "Minnesota Act").[1] Best

---

[1]    Section 513.45(b) of the Minnesota Act, which is identical to § 5(b) of the Uniform Fraudulent Transfer Act ("UFTA"), provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

3

Buy countered that the BBE services, which were worth at least $19.01 million, constituted subsequent new value under § 513.48(f)(1), and reduced its liability for the Transfer by at least that amount.[2]

Best Buy moved for partial summary judgment on a variety of issues, including the new value defense, and the Court denied that aspect of its motion in the *Prior Decision*. In relevant part, the *Prior Decision* held that Best Buy, the transferee, could not rely on the services provided by third-party BBE in support of its new value defense. Parsing the language of 11 U.S.C. § 547(c)(4) and Minnesota Act § 513.48(f)(1), the Court concluded that the creditor or insider that received the transfer had to be the same entity that provided the new value. *Prior Decision*, 462 B.R. at 73-74.

## DISCUSSION

Rule 56(f)(1) of the Federal Rules of Civil Procedure allows a court to grant summary judgment to a nonmovant "[a]fter giving notice and a reasonable time to respond."[3] The notice requirement provides the parties with "an opportunity to marshal evidence on the motion for submission to the court." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 223 (3d Cir. 2009); *accord Ramsey v. Coughlin, III*, 94 F.3d 71, 73-74 (2d Cir. 1996) (In granting summary judgment for the nonmovant, "[c]are

---

[2]   Pursuant to § 513.48(f)(1), "[a] transfer is not voidable under section 513.45(b) . . . to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien." Section 513.48, which is identical to section 8 of the UFTA, is derived from § 547(c)(4) of the Bankruptcy Code. *Prior Decision,* 462 B.R. at 72.

[3]   Case law arising prior to the December 1, 2010 amendments to Rule 56 regarding adequate notice and an opportunity to respond remains controlling, but doubt as to the court's power to grant summary judgment to the nonmovant is eliminated. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 71 (3d ed. Supp. 2011).

should, of course, be taken by the [court] to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." (quoting 6 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 56.12, at 56-165 (2d ed. 1995))). The notice provision is designed to ensure that the nonmovant does not suffer procedural unfairness, which occurs when a party "is surprised by the [court's] action and that surprise results in the party's failure to present evidence in support of its position." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000); *accord Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) ("To determine whether the absence of a cross motion affected the result, an appellate court must ascertain whether the facts before the district court were fully developed so that the moving party suffered no procedural prejudice."). Additionally, "providing the adversely affected party with notice and an opportunity to be heard plays an important role in establishing the fairness and reliability of the order." *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999) (finding that the district court erred in dismissing a complaint without giving the plaintiff notice and an opportunity to be heard in opposition).

The Court issued the order to show cause to comply with the literal requirement of Rule 56(f)(1) and not out of a concern about procedural unfairness. The plaintiff raised the ineligibility of third party new value in opposition to Best Buy's motion for partial summary judgment. Best Buy had the incentive and opportunity at that time to

5

come forward with its contrary proof and arguments, and as discussed immediately below, did so. Although Best Buy may now wish that it did more, it will not suffer any procedural unfairness if the Court grants partial summary judgment to the plaintiff *on the existing record* as the sole question posed by the order to show cause was whether the plaintiff is entitled to partial summary judgment based on the *Prior Decision*. *Prior Decision*, 462 B.R. at 74 ("This conclusion appears to dispose of Best Buy's new value defense to the Transfer, but the plaintiff did not move for summary judgment."). The order to show cause did not invite a new motion for summary judgment, nor was it a *sua sponte* motion for reargument.

Nevertheless, Best Buy has essentially responded with a hybrid motion for summary judgment/reargument, supplying new evidence, making new arguments, and citing new case law, all in support of its assertion that the new value defense presents a question of fact that must be decided only after trial. (*Best Buy's Memorandum Showing Cause Regarding its New Value Defense*, dated Jan. 13, 2012 ("*Best Buy Memo*"), at 15 (ECF Doc. # 209).) The only factual argument that Best Buy had made in response to the plaintiff was that

> Best Buy is a consolidated entity that operates through its subsidiaries. Best Buy could only provide the services in question through Best Buy Enterprise Services, and the provision of the services in question impacted Best Buy as a consolidated entity no differently than if Best Buy had provided the services directly.

(*Best Buy Defendants' Reply Memorandum of Law in Support of Their Motion for Partial Summary Judgment*, dated Sept. 30, 2011 ("*Best Buy Summary Judgment Reply*"), at 30-31

6

(ECF Doc. # 197).) As to this point, the idea that Best Buy could not provide the new value is immaterial under the plain meaning of 11 U.S.C. § 547(c)(4) which requires that "such creditor," *i.e.*, the preferred creditor, must provide the new value. In any case, it is belied by the fact that Best Buy guaranteed BBE's performance through the Parent Undertaking, an undertaking that Best Buy concedes Musicland Holding demanded. If BBE defaulted, Best Buy would have to perform the TSA or pay damages.

Best Buy did not repeat this argument in response to the Court's order to show cause, but made a host of new ones which could have been raised in response to the plaintiff's opposition. (*See Best Buy Memo* at 3-8.) It now argues that BBE (as opposed to Best Buy) could not have provided the services to Musicland Holding without Best Buy's authorization because "BBE, a subsidiary that exists for the purpose of serving other BBY subsidiaries, is simply not in the business of providing services to unaffiliated parties." (*Id.* at 7; *accord Declaration of Ryan Robinson*, dated Jan. 12, 2012, at ¶ 7 (ECF Doc. # 211).) This belated statement is little more than an unsupported legal opinion whose accuracy depends on limitations set forth in BBE's certificate of incorporation and by-laws. It also sounds like an effort by Best Buy to reverse pierce its own corporate veil, which it cannot do for the reasons discussed below. Furthermore, like the other newly advanced arguments regarding the materiality of the TSA to the deal, Best Buy's lost opportunity costs, and the necessity of the transitional services to TMG, it is immaterial and irrelevant to the legal question posed by the new value defense.

7

Similarly, the cases cited in the *Best Buy Memo* are mentioned for the first time by Best Buy, and are distinguishable. The only case that Best Buy had cited in its earlier reply brief, *CareerCom Corp. v. U.S. Dep't of Educ. (In re CareerCom Corp.)*, 215 B.R. 674 (Bankr. M.D. Pa. 1997), (*see Best Buy Summary Judgment Reply* at 31), was discussed at length in the *Prior Decision*, 462 B.R. at 74. Two of Best Buy's new authorities, *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111 (5th Cir. 1995) and *Venturelink Holdings, Inc. v. Kirkpatrick & Lockhart, L.L.P.*, No. 3:05-CV-2103-L, 2006 WL 2844121 (N.D. Tex. Oct. 2, 2006), did not even involve the new value defense.

In *Southmark*, the debtor used a centralized cash management system. It paid a former employee (Grosz) using a check that named one of its subsidiaries ("ARA"), as the remitter, and the employee's W-2 reported ARA as the payor. *Southmark*, 49 F.3d at 1113-14. After bankruptcy ensued, Southmark brought an adversary proceeding against Grosz to recover a preference. The issue was whether Southmark used its own funds to pay Grosz, and the answer turned on whether Southmark controlled the funds that it used. Reversing the lower court award of summary judgment to Grosz, the Court concluded that the ownership of the funds presented a disputed issue of material fact. "The check paid to Grosz was drawn on Southmark's Payroll Account . . . to which Southmark held complete legal title, all indicia of ownership, and unfettered discretion to pay creditors of its own choosing, including its *own* creditors." *Id.* at 1116 (emphasis in original). The last point was particularly important because if Southmark

8

could have used the funds to pay its own creditors, the transfer to Grosz diminished the resources available to pay its other creditors. *Id.* at 1116-17.

*Venturelink* involved a variation on the same theme. There, the debtor, PUSA, owed legal fees to Kirkpatrick & Lockhart ("K&L"). Eighteen days before PUSA's bankruptcy, its parent company, PEWC, wired $1 million to K&L to pay PUSA's debt. *Venturelink*, 2006 WL 2844121, at *1. The transfer was ultimately booked as a loan to PUSA on PUSA's books. *Id.* In the course of postpetition preference litigation, the district court reversed the bankruptcy court's award of summary judgment to K&L. It explained that the "relevant inquiry is not who actually made the payment to K&L or whether the money ever transferred in or out of PUSA's bank accounts, but whether the original instruction and designation of K&L as a creditor to be paid came from PUSA . . . ." *Id.* at *6. After reviewing the evidence in the light most favorable to PUSA, the court determined that PUSA raised a genuine issue of material fact as to whether PUSA designated that K&L be paid independently of PEWC and reversed the grant of summary judgment for K&L. *Id.* at *7.

Best Buy relies on the control test, used to determine whether the transferred property was "property of the debtor," to argue that a preferred creditor can rely on subsequent new value provided by a wholly-owned subsidiary it controls. Although there are very limited situations, discussed below, that permit a shareholder to disregard the corporate identity of a subsidiary to shield itself from liability, Best Buy has failed to satisfy those requirements or provide any support for its argument that a

9

preferred creditor can utilize third-party new value under 11 U.S.C. § 547(c)(4) to offset its preference liability.

Two other cases cited by Best Buy were actually cited by the plaintiff in its earlier opposition, and support the Court's previous conclusion. In *Lingley v. Stuart Shaines, Inc. (In re Acme-Dunham Inc.)*, 50 B.R. 734 (D. Me. 1985), the trustee sought to recover alleged preferences paid to three individuals who were also partners in RHS. RHS had loaned the debtor $100,000 subsequent to most of the transfers. *Id.* at 736-37. The district court recognized that under § 547(c)(4) of the Bankruptcy Code, the party that received the preference had to be the same party that gave the new value. *Id.* at 742 ("The question posed by the facts here is whether the creditors to whom the alleged preferential transfers were given are, for the purposes of the statute, the same as the creditor which gave new value."). It denied the defendants' motion for summary judgment because the briefing was inadequate, and even if the new value provided by RHS was available to the individual defendants as a defense, summary judgment would still be inappropriate because a genuine issue of material fact remained regarding the parties' various interests in the partnership. *Id.* At the very least, each of the three individual defendants could not insist on a $100,000 credit since only $100,000 was advanced by RHS. *Id.*

In *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 56 B.R. 339 (Bankr. D. Minn. 1985), *aff'd in part & remanded in part on other grounds*, 850 F.2d 1275 (8th Cir. 1988), one of the principal issues was whether payments made by the

10

preferred creditor to a third-party to satisfy the debtor's obligation to that third party constituted subsequent new value within the meaning of 11 U.S.C. § 547(c)(4). However, the defendant also sought credit based on subsequent transfers by its affiliate (Aviation). *Bellanca Aircraft*, 56 B.R. at 398. The bankruptcy court agreed with the plaintiffs that the "new value must be given by the same creditor that received the preferential transfer," *id.*, and citing Minnesota law, rejected the defendant transferee's efforts to reverse pierce its own corporate veil to obtain the benefit of Aviation's subsequent new value. *Id.* at 399 & n.62. This is precisely what Best Buy is attempting to do when it relies on the new value provided by BBE.[4]

The last case discussed by Best Buy is *Jones Truck Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323 (8th Cir. 1987). In the *Prior Decision*, the Court included a parenthetical explanation as to why *Jones Truck Lines* supported its earlier conclusion that Best Buy could not utilize

---

[4] As used here, reverse piercing allows a shareholder (Best Buy) to disregard the corporate identity of its subsidiary (BBE) to obtain a benefit that would not otherwise be available to the shareholder. *See Roepke v. Western Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn. 1981). It is permissible only in limited circumstances because of the "danger of a debtor being able to raise or lower his corporate shield, depending on which position best protects his property." *Cargill, Inc. v. Hedge*, 375 N.W.2d 477, 480 (Minn. 1985). It is allowed only "1) where very significant policy reasons justify it, 2) where there is virtually no distinction between the individual and his corporation, and 3) where others will not be harmed by the pierce." *Bellanca Aircraft*, 56 B.R. at n.62. Best Buy did not offer a "reverse piercing" analysis, but it is nonetheless clear that the facts do not support reverse piercing. There is no significant policy reason that justifies it, particularly where TMG paid for the new value that Best Buy now seeks to use. Furthermore, the parties always distinguished between Best Buy and BBE. BBE (not Best Buy) agreed to provide the transitional services "through its own resources or the resources of its Affiliates." (*Declaration of Anne M. Lockner*, dated Jan. 13, 2012, at Ex. B (TSA at § 2.3) (ECF Doc. # 210).) Best Buy concedes that Musicland Holdings did not know BBE, and consequently, insisted that Best Buy guarantee BBE's performance. (*Best Buy Memo* at 6.) Finally, Musicland's creditors will be harmed if Best Buy is permitted to shield itself from liability using BBE's transitional services. This will allow the Best Buy corporate family to achieve the double benefit of retaining the initial preference as well as the payment for the new value, and thereby diminish the estate in the amount of the original preference.

BBE's new value.  *See Prior Decision*, 462 B.R. at 74.  Best Buy's discussion of the case, (*see Best Buy Memo* at 11-12), misstates its holding.  There, the debtor was a party to a collective bargaining agreement that required it to make contributions on behalf of its employees to certain employee benefit funds (Central States).  *Id.* at 325.  After the debtor fell behind in its contributions, it entered into an agreement with Central States to catch up.  *Id.* at 325-26.  The debtor eventually filed for chapter 11, and sued Central States to recover the approximate $6 million paid during the 90 day period preceding the petition.  *Id.* at 325.  The bankruptcy and district courts concluded that the debtor could recover the payments, and Central States appealed.  *Id.*

The issue on appeal to the Eighth Circuit concerned the contemporaneous new value defense under 11 U.S.C. § 547(c)(1) and the subsequent new value defense under 11 U.S.C. § 547(c)(4).  Both defenses were based on the fact that the employees continued to work for the debtor during the period that the debtor was making the catch-up payments.  The debtor contended that the defenses were not available because the employees rather than Central States provided the new value.  Initially, the Court reasoned that the preferential payments and the new value flowed between the debtor and its employees, implying that Central States was a mere trustee, indistinguishable from the employees in the transaction with the debtor.  *See id.* at 327.

The Court then addressed the contemporaneous new value defense under §

12

547(c)(1).[5] It held that this provision did not require that the creditor who received the preference be the one who gave the new value; it only required that new value be given to the debtor, including new value provided by a third-party. *See id.* Drawing a critical distinction between contemporaneous and *subsequent* new value, the Court added: "Section 547(c)(4), on the other hand, applies if the '*creditor gave new value,*' a phrase to which 'for the benefit of' must be added to clarify that three-party exchanges are included." *Id.* (emphasis in original). Thus, the latter provision extends to transfers by the debtor "to or for the benefit of a creditor" where "*such creditor* gave new value to or for the benefit of the debtor. " (Emphasis added.) The three-party exchanges under § 547(c)(4) do not, however, apply to new value given *by a third-party* to or for the benefit of the debtor. *Accord First Sec.-Bank, N.A. v. Davis (In re Telsave Corp.)*, 116 Fed.Appx. 91, 92 (9th Cir. 2004); *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348, 353 n.2 (Bankr. S.D. Fla. 2007); *see New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680 (3d Cir. 1989) ("The three requirements of section 547(c)(4) are well established. First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance 'new value' to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition."); *Manchester v. First Bank & Trust Co. (In re*

---

[5]    Section 547(c)(1) shields the preferred creditor to the extent that the preference was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and [was] (B) in fact a substantially contemporaneous exchange."

*Moses)*, 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000) (contrasting § 547(c)(1), which allows a third party to deliver *contemporaneous* new value, with § 547(c)(4), which expressly requires the transferee-creditor to provide the *subsequent* new value).

The Court next discussed another aspect of § 547(c)(4), first observing that if the employees' continued services did not constitute contemporaneous new value, they qualified as subsequent new value. *Jones Truck Lines*, 130 F.3d at 328-29. Best Buy erroneously characterizes this statement as the Court's alternative holding, (*Best Buy Memo* at 12), ignoring its context. The Court had already indicated that the preferential payments and the new value traveled between the debtor and its employees, viewing Central States as a trustee acting for the employees' benefit. Thus, on the facts, treating the employees' continued services as new value was consistent with the Court's interpretation of § 547(c)(4) that the creditor receiving the preference must be the same person that provided the subsequent new value. The balance of the Court's discussion dealt with the question of whether Central States could assert a new value defense if the debtor had paid for the new value with avoidable transfers. *Id.* at 329. I discussed this issue at length in the *Prior Decision*, and ultimately decided it in Best Buy's favor under Minnesota law. *See* 462 B.R. at 70-73.

Returning to the order to show cause that the Court issued, Best Buy has failed to demonstrate why the plaintiff should not be entitled to partial summary judgment on the existing record in connection with the subsequent new value defense based upon the *Prior Decision*. Accordingly, partial summary judgment is granted to the plaintiff

14

but only to the extent of the subsequent new value relied on in the transitional services provided by BBE.  The parties are directed to settle an order consistent with the disposition of the subsequent new value defense under the *Prior Decision* and this opinion.

    So ordered.

Dated: New York, New York
       March 7, 2012

                                             /s/ *Stuart M. Bernstein*
                                               STUART M. BERNSTEIN
                                       United States Bankruptcy Judge